JAMES J. LOUGHERY *vs.* ELMER H. BRIGHT.

Suffolk.    May 15, 1929. — June 5, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Trust,* Powers of trustees, Voting trust. *Contract,* Construction, Performance and breach. *Corporation,* Stockholder's voting trust. *Conversion. Actionable Tort.*

Where it is required by a trust agreement that a certain number of trustees is to act, a lesser number cannot deal with the trust property.

Allegations in the declaration in an action of contract were that the plaintiff owned a number of shares of the common stock of a certain corporation which represented the voting control of the corporation; that he entered into a contract in writing with the corporation, a trust company and several individuals, among whom the defendant was not included, which provided that he should transfer to the defendant and two other individuals shares of such common stock to be held by them under a voting trust agreement for three years, "to the end that the aforesaid voting trustees should have voting control of a majority of the issued and outstanding shares . . . and might determine the election of a board of five . . . directors"; that the plaintiff transferred all his shares of common stock to the defendant, receiving a receipt in which the defendant stated that they were "to be held in a voting trust under the terms of" the said agreement; that thereupon all the officers of the corporation resigned, except the plaintiff, who remained as a director; that the defendant, although frequently asked so to do, had neglected to take any action "looking toward the election of a board of directors or the procuring of the necessary capital for the carrying on of" the business, had refused to consult with a cotrustee, and had failed to return to the plaintiff his stock; and that in consequence the corporation had lost all its assets and the plaintiff had been damaged. From the agreement, it appeared that the full board of trustees had not qualified. A general demurrer by the defendant was sustained. *Held,* that

(1) On the facts alleged in the declaration, the defendant could not be called on to act alone and apart from cotrustees;

(2) There was nothing in the agreement to support an allegation that the management and control of the corporation passed to the trustees: its management and direction still remained with its directors;

(3) The defendant could not be called upon to vote at a stockholders' meeting for the election of a new board of directors until a meeting was called, and it did not appear that he had any authority to call such a meeting;

(4) The demurrer properly was sustained.

A second count of the declaration alleged further that "the defendant, although frequently requested, wilfully, and intending that the plaintiff should be injured thereby" failed to take any action. *Held*, that with such added allegation no cause of action was stated: the defendant not being shown to have been under any obligation to act, his motives were immaterial.

A third count in the declaration above described added to the allegations of the second count an allegation that, by the action described, the defendant had converted the plaintiff's stock to his own use. *Held*, that, with such allegation added, no cause of action was stated: the defendant rightfully was in possession of the stock, and could not dispose of it except with his cotrustee or trustees; moreover, no demand for return of the stock was alleged.

CONTRACT, upon the agreement in writing described in the opinion. Writ dated August 10, 1928.

The receipt signed by the defendant, referred to in the declaration and opinion, read as follows:

Boston, Aug. 28, 1922.

Received of James J. Loughery forty-three thousand one hundred and fifty and 1/2 (43,150½) shares of the common stock of the American Ammonia Co. to be held in a voting trust under the terms of an agreement between the American Ammonia Co. and others dated August 12, 1922.

(Signed)          W. G. Davis, agent for
                  Elmer H. Bright one of the voting
                  trustees.

The defendant demurred to the declaration. The demurrer was heard by *Whiting*, J., and was sustained. The plaintiff appealed.

*M. E. Nash*, for the plaintiff.

*J. A. Daly*, for the defendant.

CARROLL, J. This case is before us on an appeal from an order sustaining a demurrer to the plaintiff's declaration. The declaration is in three counts. The action is in tort or contract.

It is alleged in the first count that on August 28, 1922, the plaintiff owned a number of shares of the common stock of the American Ammonia Company which represented the voting

control of said company; that on August 12, 1922, he entered into an agreement in writing with the American Ammonia Company (hereinafter called The Company), the Central Trust Company (as executor under the will of Richard Hittinger), Morton B. Howard, Elbridge R. Anderson, Horace Guild and George B. Howard. A copy of the agreement is attached to the declaration and made a part thereof. This agreement provided that the plaintiff was to transfer to the defendant Bright, to Joseph H. O'Neil and to Charles H. Olmsted, thirty-eight thousand shares of the common stock of The Company, to be held by them as trustees under a voting trust agreement, for three years from August 12, 1922, "to the end that the aforesaid voting trustees should have voting control of a majority of the issued and outstanding shares . . . and might determine the election of a board of five (5) directors." The agreement also provided that it was entered into for the purpose of procuring the necessary capital to carry on the business of The Company by borrowing or by selling its stock; that the plaintiff was to resign as treasurer and general manager but The Company was to employ him for three years at a salary of $3,250 a year. It is further alleged that the plaintiff resigned as treasurer and general manager, and on August 28, 1922, delivered to Bright forty-three thousand one hundred fifty and one half shares of stock, receiving a receipt therefor, a copy of which is attached to the declaration; that when the stock was delivered, the plaintiff was the owner of a secret formula under which The Company's products had been manufactured, and that he held a promissory note of The Company for $21,228.22, which note he gave up to The Company in payment for preferred stock in accordance with the agreement of August 12, 1922; that upon the execution of this agreement all the officers and directors of The Company, except the plaintiff who remained as a director only, resigned prior to the delivery of the stock; that when the defendant received the stock he knew of these resignations and, although frequently requested to do so, neglected to take any action "looking toward the election of a board of directors or the procuring of the necessary capital for the carrying on of" the business of The

Company; that the defendant has never consulted with his cotrustee O'Neil, he has refused to consult with him, and has failed to return the stock to the plaintiff, "in consequence of which said American Ammonia Company lost all its assets; all to the great damage of the plaintiff."

The second count is substantially similar to the first count, except that it is there alleged that "the defendant, although frequently requested, wilfully, and intending that the plaintiff should be injured thereby" failed to take any action. The third count differs from the second in alleging that the defendant "thereby converting to his, the defendant's own use" the plaintiff's stock in consequence of which said American Ammonia Company lost all its assets. The demurrer is a general one.

The agreement recites that The Company is heavily indebted in the sum of $146,704.68; that it has disputed claims against "certain parties to this agreement"; that it is desired by all parties that the affairs of The Company be settled, "to the end that there may be no further litigation or threats of litigation, between . . . the parties interested in said corporation"; that the said corporation may be unhampered, in so far as the parties to this agreement may provide, in pursuing its regular business without embarrassment from attachments or judgments or threats of litigation, and may be in a position to procure the necessary capital for carrying on its business, either by borrowing or by selling its stock. The agreement sets out that The Company has certain notes of one Cheney as assets. It provides that the Central Trust Company and other parties shall release The Company and that The Company shall release them from all claims; that The Company agreed to deliver its preferred stock to these parties in an amount equal to the amount of the debts owed them, and to deliver to trustees the Cheney notes "for the purpose of collecting any money due it" from Cheney.

By the seventh clause of the agreement "The said James J. Loughery hereby agrees to assign . . . unto Joseph H. O'Neil . . . Elmer Bright . . . Charles H. Olmsted . . . thirty-eight thousand (38,000) shares of the Common Capital

Stock of the said American Ammonia Company to be held by them as trustees under a voting trust agreement to continue for three years (3) from the date hereof," so that the voting trustees would have the voting control of a majority of the shares of The Company to determine the election of a board of five directors during the term of the voting trust agreement; and in the event of the incapacity, resignation, death, failure or refusal to act of the said O'Neil, Loughery was to appoint his successor and "any written instrument addressed to the said American Ammonia Company . . . by said new trustees shall be sufficient notice to all the parties hereto of the appointment and qualification of such new trustee; and in the event of the death, resignation, incapacity, failure to act, or refusal to act of the said Elmer Bright," the Central Trust Company shall appoint his successor. Written notice to The Company shall be sufficient notice of the appointment of the new trustee, and in the event of the resignation, death, incapacity, failure or refusal to act by Olmsted, Andrew G. Webster was to be his successor.

The agreement was signed by The Company by its vice president and treasurer, by the Central Trust Company, and by Horace Guild, James J. Loughery, Morton B. Howard, George B. Howard and Elbridge R. Anderson, and has annexed to it the statement, "We, the undersigned, trustees named in the foregoing instrument, hereby accept the said trust upon the terms hereinabove incorporated." This is signed by Hurley and Daly, trustees of the Cheney notes, and also by Bright and O'Neil. It was not signed by Olmsted or Webster.

By the agreement of August 12, 1922, the parties agreed to form a voting trust and three individuals were named as trustees. By the mere naming of a person as trustee he does not become one. He must accept the trust. See *Evans* v. *John*, 4 Beav. 35. See *Carruth* v. *Carruth*, 148 Mass. 431, 434; *Sells* v. *Delgado*, 186 Mass. 25, 28. Bright and O'Neil accepted the appointments as trustees. But it does not appear that either Olmsted or his successor Webster ever assented to the agreement or accepted the trust. Where it is required by a trust agreement that a certain number of

trustees is to act, a lesser number cannot deal with the trust property. *Boston* v. *Robbins*, 126 Mass. 384, 388. Since the full board of trustees never qualified, the defendant was not authorized to deal with the trust property. The alleged voting trust never came into existence. If Olmsted or Webster refused or neglected to act, the remedy of the plaintiff was to ask a court of equity to appoint a trustee in his place. *Sells* v. *Delgado, supra.*

Even if it be assumed that the voting trust did come into existence, the declaration fails to show any occasion for the trustees to act. The power of the trustees was limited to voting at meetings. *Lawrence* v. *Curtis*, 191 Mass. 240, 243, 244. There is no greater power given them by the agreement. There is nothing in the agreement to support the allegation that the management and control of the corporation passed to the trustees. The agreement provided that the stock was transferred to the trustees, in order that they might have voting control of the majority of the common stock and "may determine the election of a Board of five (5) directors." This agreement merely gave to the trustees the right to vote the stock held by a certain stockholder. The management and direction of the corporation was vested in the directors and not in the stockholders. *Hayden* v. *Perfection Cooler Co.* 227 Mass. 589, 592.

It is not alleged in the declaration that a stockholders' meeting was ever held at which directors could have been elected, nor that the defendant had any authority under the agreement to call such a meeting, nor that any occasion arose when the defendant could have acted as a voting trustee. The declaration does not state that the shares which were to be transferred to Bright, O'Neil and Olmsted were ever recorded in their names, and that only shareholders of record are entitled to vote at a stockholders' meeting. *J. H. Wentworth Co.* v. *French*, 176 Mass. 442, 443. *Barrett* v. *King*, 181 Mass. 476, 478. The declaration alleges that the defendant failed to take any action toward the election of directors and the procuring of capital, in consequence of which The Company lost its assets to the damage of the plaintiff. There is nothing in the declaration to show in

what way the assets were lost or that the loss was directly traceable to some act or omission by the defendant, nor what the defendant as one of the'three trustees named could have done to avert the loss. The loss may have occurred if the stock was voted at a stockholders' meeting. The loss does not appear to be the clear result of the defendant's alleged wrong. *Loughery* v. *Central Trust Co.* 258 Mass. 172.

The second and third counts allege that the defendant, wilfully intending harm to the plaintiff, failed to act. The defendant was under no legal obligation to act; his motives, therefore, were immaterial. *Plant* v. *Woods,* 176 Mass. 492, 499.

The third count states no cause of action. The custody of the stock according to the receipt was in O'Neil and Bright. Neither would have the right to return it without the action of all the trustees. *Boston* v. *Robbins, supra.* Furthermore, the defendant came into possession of the stock rightfully. He never disposed of it and, so far as appears, was never asked to deliver it to the plaintiff; and no demand was made on him for its return. Even if the plaintiff was entitled to possession the defendant could not be held guilty of a conversion until demand had been made. There is nothing in *Hellier* v. *Achorn,* 255 Mass. 273, 284, in conflict with what is here decided. *Baker* v. *Lothrop,* 155 Mass. 376, 378, holds that where the taking is tortious or there has been an actual conversion demand and refusal are unnecessary.

Without considering the other objections urged by the defendant, the demurrer was sustained properly. The order sustaining the demurrer is affirmed.

*So ordered.*