595 F.2d 890
 Alfred M. JOHNSTON, Individually, Alfred M. Johnston,
Trustee, and Daniel R. Greenwood, Trustee,
Plaintiffs-Appellants,
v.
HOLIDAY INNS, INC., Defendant-Appellee.
Alfred M. JOHNSTON, Trustee, and Daniel R. Greenwood,
Trustee, Plaintiffs-Appellants,
v.
HOLIDAY INNS, INC., Wayne C. Marsh and Lee A. Berthelsen,
Trustees,Defendants-Appellees.
 Nos. 78-1362, 78-1363.
 United States Court of Appeals,
First Circuit.
 Argued Dec. 4, 1978.
Decided March 30, 1979.
 
 John W. Arata and Richard L. Brickley, Boston, Mass., with whom Brickley, Sears & Cole, Boston, Mass., was on brief, for appellants.
 Samuel Hoar, Boston, Mass., with whom Thomas H. Lee, II., and Goodwin, Procter & Hoar, Boston, Mass., were on brief, for appellees.
 Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.
 BOWNES, Circuit Judge.
 
 
 1
 This case is the second attempt by appellants to avoid the consequences of a business deal that went sour. See Johnston v. Holiday Inns, Inc., 565 F.2d 790 (1st Cir. 1977). This is an appeal from an order of the district court granting summary judgment in favor of defendants-appellees, Holiday Inns, Inc., et al. and the subsequent denial of appellants' motion to amend their complaints.
 
 
 2
 The facts are complex and involve a series of transactions entered into by appellants, Alfred M. Johnston and Daniel R. Greenwood, and two corporations, Holiday Inns, Inc. (Holiday) and Holiday Inns of Massachusetts (Holiday-Mass.), a wholly owned subsidiary of Holiday. Two business agreements were executed and a trust created by the parties acting in different capacities.
 
 
 3
 The first agreement, entitled Memorandum Agreement, was formed by appellants and Holiday for the purpose of launching a joint business enterprise to operate appellants' restaurant-complex in East Boston known as Boston 1800. In connection therewith, Holiday made a commitment to build a 300 room motel on land owned by appellants located adjacent to the restaurant. Holiday and appellants then created a "nominee trust," known as the Flying Cloud Trust, for the purpose of holding title to the restaurant and some additional real estate. The declaration of trust named appellants and two officers of Holiday, Wayne C. Marsh and Lee A. Berthelsen, as trustees. The sole beneficiary of the trust was a joint venture created by the second agreement, which was between appellants and Holiday-Mass. The joint venture agreement provided for purchase payments to appellants in the sum of $5,000 per month for twenty years and allocated an initial capital account of 50% Of the book value of the assets held by the nominee trust to each of the parties.
 
 
 4
 Appellants conveyed title to the restaurant and other real estate to the trust. They also transferred title to the land on which the motel was to be built to Holiday. A $1,600,000 mortgage loan commitment from a bank which had been secured jointly by Holiday and appellants was assigned to the trust. The trust, in turn, leased the restaurant to Holiday which, under the lease, agreed to operate it for the benefit of the parties to the Memorandum Agreement, maintain certain liability and fire insurance coverage, and make business interruption payments of $450 for each day that business could not be conducted for any reason. Holiday further agreed to make maximum rental payments to the trust of 7% Of the gross receipts from the operations with a minimum payment of $13,552 per month, the amount necessary for the mortgage installment payments. The lease also provided that in the event rental payments fell below the minimum, the lease could be terminated by the lessor (trust) unless Holiday opted to make up the difference. All of these transactions took place in May and June of 1968.
 
 
 5
 In the following months, the business of the restaurant began to decline.[1] Holiday then subleased the premises and sold its contents to a third party, Celebrity Hosts, Inc. While the sublessee was in possession, a fire destroyed the restaurant in January, 1971. Appellants allege that Holiday failed to maintain adequate fire insurance. In November, 1971, the mortgagee bank exercised its option to accelerate the mortgage payments because of the failure by Holiday to construct the motel and allowing someone other than itself to operate the restaurant. Holiday thereupon purchased the mortgage from the bank.
 
 
 6
 After the fire, Holiday failed to make the business interruption payments called for in the lease, thus forcing the joint venture into default on the mortgage now held by Holiday. On January 18, 1974, Holiday bought the premises at a foreclosure sale.
 
 
 7
 Appellants, in their capacity as trustees, filed suit against Holiday in federal court in July, 1973, seeking damages for breach of the lease and for conversion of personalty owned by the trust.[2] Another action filed in state court against Holiday and its two officers was removed to federal court. The cases were consolidated for trial in May of 1974. On September 16, 1976, Holiday moved for summary judgment and on November 10, 1976, appellants also filed a motion for summary judgment. The trial court granted Holiday's motion on May 11, 1978. Appellants then engaged new attorneys and filed motions to vacate the judgment and amend the complaint, which were denied without hearing on July 10, 1978.
 
 
 8
 I. Appellants' Authority to Maintain the Action
 
 
 9
 The district court granted summary judgment for Holiday on the basis that under the trust, appellants lacked the necessary authority to maintain the action. In order to determine the correctness of this ruling, we must first examine the characteristics of a "nominee trust" in Massachusetts.
 
 
 10
 A nominee trust is an entity created for the purpose of holding legal title to property with the trustees having only perfunctory duties; upon termination of the trust, the beneficiaries accede to title as "tenants in common in proportion to their beneficial interests." R. Birnhaum and J. Monahan, The Nominee Trust in Massachusetts Real Estate Practice, 60 Mass.L.Q. 364 (Winter 1976).
 
 
 11
 The declaration of trust provided that "(e)xcept as herein provided in case of the termination of this trust, the Trustee shall have no power to deal in or with the trust estate except as directed by all of the beneficiaries." It further stated that "(a)ny three Trustees may exercise the power of all Trustees hereunder." Where a trust instrument requires a specified number of trustees, a lesser number cannot act validly on behalf of the trust. Loughery v. Bright, 267 Mass. 584, 588-89, 166 N.E. 744, 746 (1929); Downey Co. v. Whistler, 284 Mass. 461, 465, 188 N.E. 243, 244 (1933); Restatement (Second) of Trusts § 194. It is undisputed that the instant action was authorized neither by all of the beneficiaries nor by three of the trustees.
 
 
 12
 Appellants argue that this limitation does not apply because Holiday's alleged breaches constituted a default under the Joint Venture Agreement, which caused the joint venture as well as the trust to be dissolved, leaving appellants free to pursue legal remedies against Holiday. This argument is based on three premises; first, that the nominee trust was merely an entity for holding legal title to the trust property for the sole benefit of the joint venture; second, that a nominee trust cannot exist without a beneficiary; and third, that Holiday's alleged breaches dissolved the joint venture with the resulting extinguishment of the trust, leaving the parties free to sue without the consent of a majority of the trustees.
 
 
 13
 Before we examine the default clause of the Joint Venture Agreement and the merits of appellants' argument, we must deal with the fact that this position was never advanced below. Holiday's motion for summary judgment was framed in terms of the absence of the requisite number of trustees or all of the beneficiaries as required by the trust instrument and the Joint Venture Agreement. It stated: "There is no genuine issue of material fact as to the plaintiffs' authorization to maintain this law suit on behalf of the Trustees of Flying Cloud Trust and that the defendant is entitled to judgment as a matter of law." In the district court, appellants met Holiday'sargument by contending that "the limitation upon the powers of the trustees relate only to business transactions affecting the trust estate," a theory that they have abandoned on appeal in favor of the argument that the trust was terminated by the breach or default of Holiday.
 
 
 14
 It is by now axiomatic that an issue not presented to the trial court cannot be raised for the first time on appeal. Roto-Lith, Ltd. v. F. P. Bartlett & Co., 297 F.2d 497, 500 (1st Cir. 1962); Demelle v. Interstate Commerce Commission, 219 F.2d 619, 621 (1st Cir. 1955). Although this rule is not absolute, it is relaxed only "in horrendous cases where a gross miscarriage of justice would occur." Newark Morning Ledger Co. v. United States, 539 F.2d 929, 932 (3rd Cir. 1976); Hormel v. Helvering, 312 U.S. 552, 556-57, 61 S.Ct. 719, 85 L.Ed. 1037 (1941). In addition, the new ground must be "so compelling as virtually to insure appellant's success." Dobb v. Baker, 505 F.2d 1041, 1044 (1st Cir. 1974).
 
 
 15
 We see no reason here for relaxing the rule against appellate review of a position not advanced in the court below. The record discloses that appellants were experienced businessmen and the possibility of a deadlock was recognized during negotiations. An uncontroverted document[3] submitted by Holiday in support of its motion for summary judgment clearly shows that appellants would not accept any of several proposed methods for resolving the potential for deadlock inherent in the trust agreement and, in fact, insisted that none be included.
 
 
 16
 Ingenious as appellant's new position is, it is not properly before us. We do not find that failure to consider it would result in a gross miscarriage of justice nor is it "so compelling as virtually to insure appellant's success." Dobb v. Baker, supra. The default clause of the Joint Venture Agreement provided:
 
 
 17
 Default. In the event of breach or default in the performance of this agreement by either party, or in the event of bankruptcy, insolvency, the appointment of a receiver for, or the termination of legal existence of either party hereto, by mutual agreement of both parties the joint venture shall be dissolved and its assets liquidated, debts discharged, and any remaining assets distributed to the parties in proportion to their capital accounts at the date of dissolution, provided that in any event a non-defaulting party shall have customary legal remedies against a defaulting party for damages for breach of contract.
 
 
 18
 Appellants argue that the insolvency of the joint venture which led to the default of the mortgage loan effectuated the dissolution of the joint venture and, in turn, the trust since there was no longer any beneficiary. This argument ignores the language of the default clause which is couched in terms of the "insolvency of the parties," I. e., appellants and Holiday-Mass., neither of which were insolvent. Moreover, the clause specifically provides that the dissolution of joint venture shall be "by mutual agreement of both parties." Concededly, this phrase could mean that the parties were in agreement as to the events triggering dissolution, but this is by no means certain, especially in light of the provisions of the nominee trust. The critical question, however, which is laden with uncertainty is whether the dissolution of the joint venture automatically compels the extinguishment of the trust, which was set up specifically for the purpose of holding title to the restaurant. Posing the issues raised by the appellant before us for the first time shows the wisdom of the rule requiring that appellate review be limited to what was raised and argued in the trial court. By not agreeing to any of the proposals that would have eliminated the deadlock contingency in the trust agreement, appellants have hoisted themselves on their own petard.
 
 
 19
 II. Whether Summary Judgment Should Have Been Granted
 
 
 20
 Both parties filed motions for summary judgment, first Holiday and then appellants. Appellants argue that there was an issue of material fact as to whether Holiday had breached fiduciary duties. Appellee's position not only is that appellants failed to raise this issue in the district court, but that they waived any question as to issues of material fact in their motion for summary judgment. Appellants' claim that summary judgment should not have been granted because there was an issue of material fact is clearly inconsistent with that taken below since their motion stated there were no genuine issues of material fact, only questions of law. No affidavits were filed in opposition to the one affidavit filed by Holiday, and appellants listed the same documents as Holiday for consideration by the court. However, the rule is that any concessions by a party as to the absence of factual issues may not be used by the court in ruling on an adversary's motion. See 10 Wright & Miller, Federal Practice & Procedure: Civil § 2720, at 462-64 (1973).
 
 
 21
 Of more importance than the intricacies of pleading in this esoteric area, however, is that whether certain acts constitute a breach of fiduciary duty is a question of law, not an issue of fact. We, therefore, view appellants argument to be that a claim for breach of fiduciary duty was advanced below and that the undisputed facts and inferences to be drawn from the summary judgment submissions, viewed in the light most favorable to appellants, precluded a finding that as a matter of law no such breach occurred.
 
 
 22
 Appellants claim that the complaint itself alleged a breach of fiduciary duty and the question was, therefore, properly raised below. They base this on the language of paragraph 10 of the amended complaint.
 
 
 23
 That notwithstanding the obligation of the defendant respecting the said mortgage and mortgage payments, it purchased the mortgage from the mortgagee bank and on January 18, 1974 it foreclosed the said mortgage by exercise of the power of sale contained therein and became the purchaser thereof at the foreclosure sale; the plaintiffs further allege and represent that the defendant continues to hold title under said foreclosure sale.
 
 
 24
 The obligation referred to in this paragraph of the complaint, however, is set forth in paragraph 9 of the complaint which provides:
 
 
 25
 That by virtue of Paragraphs 1, 3D, 6D, and 10 of said lease, the defendant obligated itself to pay to the Flying Cloud Trust monthly a sum sufficient to ensure that the monthly installments under the said mortgage could at all times be paid during the term of said mortgage; that thereby, the defendant guaranteed to hold the Flying Cloud Trust harmless from any breach whatever of the conditions of said mortgage relating to payments.
 
 
 26
 We read the above to refer only to a breach by Holiday of its contractual obligation to make payments under the terms of the lease; there is no reference, explicit or implied, to a breach of fiduciary duty.
 
 
 27
 Appellants also rely on the third prayer of the complaint which seeks the enforcement of a "resulting trust":
 
 
 28
 That the defendant holds the title to the real estate which it acquired by the said foreclosure upon a resulting trust in favor of the Flying Cloud Trust, subject to such terms as the court may impose.
 
 
 29
 Appellants confuse a resulting trust with a constructive trust. "A resulting trust typically arises when a transfer of property is made to one person and the purchase price is paid by another; in such a case a trust results in favor of the person who furnished the consideration." Meskell v. Meskell, 355 Mass. 148, 150, 243 N.E.2d 804, 806 (1969). A resulting trust, unlike a constructive trust, does not arise from a breach of fiduciary duty.
 
 
 30
 A constructive trust may be said to be a device employed in equity, in the absence of any intention of the parties to create a trust, in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property was obtained by fraud or in violation of a fiduciary relation or arose where information confidentially given or acquired was used to the advantage of the recipient at the expense of the one who disclosed the information.
 
 
 31
 Barry v. Covich, 332 Mass. 338, 342, 124 N.E.2d 921, 924 (1955). Given the absence of any reference to a breach of fiduciary duty elsewhere in the amended complaint, the mere prayer for the imposition of a resulting trust, which would have to be construed as an allegation of a constructive trust, cannot be said to have raised the issue of Holiday's fiduciary obligation to plaintiffs, especially since it was not raised in any of the papers filed with the court on the motions for summary judgment, nor, as far as we can determine, alluded to in argument below. Nor can it be said that this new theory virtually ensures appellants' success. Dobb v. Baker, supra, 505 F.2d at 1044.
 
 III. Denial of Motions to Amend the Complaint
 
 32
 The district court denied appellants' motion to amend the complaints to allege breach of fiduciary duty after judgment had been entered on the grounds that appellants were "guilty of undue and unjustified delay" in filing the motion and that defendants would be prejudiced if it were granted.
 
 
 33
 Leave to amend a pleading under Fed.R.Civ.P. 15(a) is a matter within the discretion of the trial court. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). An order denying leave to amend will be overturned only for an abuse of that discretion, the exercise of which should be guided by the criteria set forth by the Supreme Court in Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962):
 
 
 34
 "In the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, under prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. the leave should, as the rules require, be 'freely given.' "
 
 
 35
 The original complaint in this action was filed on July 26, 1973, and an amended complaint was filed on February 12, 1974. Defendant's motion for summary judgment was served on September 15, 1976, and plaintiffs' cross-motion filed on November 10, 1976. The motions were heard on December 9, 1976, and the court issued a memorandum opinion and judgment on May 11, 1978. It was not until June 9, 1978, when the ball game was over in the district court, that appellants' new counsel filed their motion to amend the complaints. Given the passage of five years since the original complaint was filed and the absence of an explanation for the failure to include a count for breach of fiduciary duty in the amended complaint filed more than four years prior to the motion to amend, we cannot say that the trial court's finding of undue and unjustified delay is without basis. Moreover, the trial court found that defendants would be prejudiced by the difficulty and expense required in locating essential witnesses for trial at this time. Six employees, including Berthelsen, directly connected with the negotiations and occurrences in this case, have left the employment of Holiday. There was no abuse of discretion in denying appellants' motion to amend the complaint.
 
 
 36
 In essence, appellants' position is that a change in lawyers entitles them to start a new game with new rules. Substitutions are allowed, but the game goes on according to the rules in effect at the time it commenced.
 
 
 37
 Affirmed.
 
 
 
 [1]
 In its counterclaim, Holiday alleged that during negotiations appellants misrepresented that the restaurant was being run at a profit and understated the outstanding debts and contingent liabilities of the restaurant operation
 
 
 [2]
 In addition, a claim was made by Johnston in his individual capacity for conversion of certain personalty owned by him. This claim was retained by the district court for consideration and is not part of this appeal
 
 
 [3]
 Memo to file from Franklin dated June 26, 1968. App. 121-126