For the First Circuit


No. 96-2000

MANUEL T. HIDALGO,

Plaintiff, Appellant,

v.

OVERSEAS CONDADO INSURANCE AGENCIES, INC.,

Defendant, Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]



Before

Torruella, Chief Judge,
Coffin, Senior Circuit Judge,
and Stahl, Circuit Judge.



Andres  Guillemard-Noble with whom Joan  S.  Peters and Nachman,
Santiago & Guillemard were on brief for appellant.
Jorge  E. Perez  Diaz with whom Pietrantoni  Mendez  & Alvarez was on
brief for appellee.



August 11, 1997

STAHL,  Circuit Judge . Plaintiff-appellant Manuel T.

Hidalgo appeals the district court's grant of summary judgment

in favor of defendant-appellee Overseas Condado Insurance

Agencies, Inc. on Hidalgo's claim for damages and equitable

relief pursuant to the Age Discrimination and Employment Act,

29 U.S.C. SS 621-634. Finding that plaintiff-appellant failed

to present evidence sufficient to meet his burden of persuasion

concerning unlawful age animus, we affirm.

Background

On January 15, 1963, Hidalgo and two partners formed

the Condado Insurance Agency, Inc. ("Condado"). Hidalgo

subsequently became the sole shareholder. In September 1982,

Hidalgo sold Condado to Royal Insurance Ltd. ("Royal"). After

the sale, Royal retained Hidalgo as president of Condado. Some

time later, Royal acquired Overseas Insurance Agencies, Inc.,

and, in 1988, merged this agency with Condado to form the

Overseas Condado Insurance Agencies, Inc. ("Overseas"). In the

process of the merger, Royal created the Condado Division of

Overseas and named Hidalgo president of the Division. The

Condado Division consisted of Hidalgo, Sagrario Maiz del Toro

(Hidalgo's secretary) and Doris Rodriguez (Hidalgo's

assistant). Dating from the sale of Condado to Royal,

Hidalgo's functions included promoting and servicing all of

Condado's existing accounts and acquiring new accounts. 

On September 1, 1993, Hidalgo's sixty-fifth birthday,

Hidalgo was to become eligible to retire and receive normal

-3-

benefits under Overseas' retirement plan. Approximately five

months before this date, on March 29, 1993, Victor Rios,

President of Royal and Chairman of Overseas, sent Hidalgo a

letter informing him that Overseas recognized that he would

become eligible for normal retirement benefits on September 1,

1993, and that Overseas expected him to retire on that date

"[i]n accordance with the company's established guidelines." 

After receiving this letter, Hidalgo informed Rios

that he did not intend to retire on September 1. On July 2,

1993, Rios sent Hidalgo another communication informing him

that the Condado Division would cease to exist on September 1

because Overseas planned to integrate it into its "regular

operation." In this same communication, Rios instructed

Hidalgo that Overseas would wait until September 1 to allow him

to "fully qualify for . . . [his] pension plan," but that it

did not intend to extend his employment contract after that

date. On August 18, Hidalgo again informed Rios of his desire

to remain as president of the Condado Division. Rios replied

by offering Hidalgo an arrangement whereby he could function as

an "independent producer" with his compensation based on

commissions and bonuses. Hidalgo refused this offer. 

Subsequently, Hidalgo filed complaints with the Equal

Employment Opportunity Commission ("EEOC") and the Department

of Labor and Human Resources of Puerto Rico. On December 30,

1993, the Department of Labor issued Hidalgo a Notice of Right

-4- 4

to Sue. On March 10, 1994, Hidalgo filed in federal district

court the complaint which underlies this appeal. He alleged

that Overseas dismissed him from his job because of his age and

requested damages and equitable relief pursuant to the Age

Discrimination and Employment Act ("ADEA"), 29 U.S.C. SS 621-

634. Hidalgo also invoked the district court's supplemental

jurisdiction pursuant to 28 U.S.C. S 1367 for his state law

claims seeking compensation for age-based discrimination, 29

P.R. Laws Ann. tit. 29, S 146 (1985). 

On June 24, 1994, Overseas filed a Motion to Dismiss

or for Summary Judgment. On June 20, 1996, the district court

(Casellas, J.), treating the motion as a motion for summary

judgment, determined that Hidalgo failed to establish one of

the elements necessary to state a prima facie case of

employment discrimination under the ADEA. Notwithstanding this

determination, the court further ruled that Hidalgo failed

either to prove that Overseas' articulated legitimate reasons

for his dismissal were a "mere pretext" or to provide evidence

of discriminatory animus on Overseas' behalf. The court also

refused to exercise pendent jurisdiction over Hidalgo's state

law claims. Consequently, the court disposed of Hidalgo's

complaint in its entirety. This appeal ensued.

Standard of Review

1. We note that Hidalgo did not appeal the dismissal of the
state law claims he stated in his complaint.

-5- 5

"[O]ur review of a grant of summary judgment is de

novo, [and] we, like the district court, are obliged to review

the record in the light most favorable to the nonmoving party,

and to draw all reasonable inferences in the nonmoving party's

favor." LeBlanc v. Great  Am.  Ins.  Co., 6 F.3d 836, 841 (1st

Cir. 1993). "'An inference is reasonable only if it can be

drawn from the evidence without resort to speculation.'"

Mulero-Rodriguez v. Ponte,  Inc., 98 F.3d 670, 672 (1st Cir.

1996) (quoting Frieze v. Boatmen's  Bank  of  Boston, 950 F.2d

538, 541 (8th Cir. 1991)). The district court's award of

summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on

file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(c). "[T]o defeat a properly supported motion for summary

judgment, the nonmoving party must establish a trial-worthy

issue by presenting 'enough competent evidence to enable a

finding favorable to the nonmoving party.'"  LeBlanc, 6 F.3d at

842 (quoting Goldman v. First  Nat'l  Bank  of  Boston, 985 F.2d

1113, 1116 (1st Cir. 1993)). "An appellate panel is not

restricted to the district court's reasoning but can affirm a

summary judgment on any independently sufficient ground."

Mesnick v. General  Elec.  Co., 950 F.2d 816, 822 (1st Cir.

1991).

-6- 6

Discussion

Hidalgo makes two primary arguments. He first

argues that the district court erred in determining that he

failed to establish a prima facie case of age discrimination

under the ADEA. He then contends that the district court

improperly concluded that he did not prove that Overseas'

reasons for dismissing him were pretextual and that Overseas'

actions derived from discriminatory animus. We address these

contentions in turn.

In an ADEA discrimination action, the plaintiff bears

the ultimate "'burden of proving that his years were the

determinative factor in his discharge, that is, that he would

not have been fired but for his age.'" Mesnick v. General

Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991) (quoting Freeman

v. Package  Mach.  Co., 865 F.2d 1331, 1335 (1st Cir. 1988)).

"[W]hen there is little overt evidence of age discrimination,

the case usually follows the ritualized burden-shifting

paradigm" set forth in McDonnell  Douglas  Corp. v. Green, 411

U.S. 792, 802-05 (1973). LeBlanc, 6 F.3d at 842. Pursuant to

McDonnell  Douglas, a plaintiff must present a prima facie

2. Interspersed with these two arguments, in addition to being
designated in a separate section of his brief, is Hidalgo's
argument that the district court committed reversible error
because it viewed the facts in the light most favorable to the
nonmoving party, namely Overseas. Instead of analyzing this
assertion independently, we address it in the context of our
analysis of Hidalgo's two primary contentions concerning the
district court's disposition of his ADEA claim. 

-7- 7

"showing of certain standardized elements suggestive of

possible discrimination." Id. 

In this circuit, McDonnell Douglas' burden shifting

paradigm assumes a slightly different form in age

discrimination cases depending on whether or not the dismissal

represented part of a reduction in force. If the plaintiff was

not dismissed as part of a reduction in force, the plaintiff

establishes a prima facie case by demonstrating the following:

"(1) [he] was at least forty years of age, (2) [he] met the

employer's legitimate job performance expectations, (3) [he]

experienced adverse employment action, and (4) [he] was

replaced by a person with roughly equivalent job

qualifications." Goldman, 985 F.2d at 1117. With respect to

the fourth element necessary to establish a prima facie case in

a nonreduction in force scenario, "[i]t is enough for [the]

plaintiff to show that the employer sought some form of

replacement performance, which would demonstrate its 'continued

need for the same services and skills.'"  Kale v.  Combined Ins.

Co. of Am. , 861 F.2d 746, 760 (1st Cir. 1988) (quoting  Loeb v.

Textron,  Inc., 600 F.2d 1003, 1013 (1st Cir. 1979)); see

Keisling v.  SER-Jobs for Progress, Inc. , 19 F.3d 755, 760 (1st

Cir. 1994);  Vega v.  Kodak Caribbean, Ltd. , 3 F.3d 476, 479 (1st

Cir. 1993). "A replacement need not be sought from outside the

company, of course, nor need he be designated formally as

-8- 8

such." Loeb, 600 F.2d at 1013 n.11; see Keisling, 19 F.3d at

760. 

If the employer dismissed the plaintiff as part of a

reduction in force, the plaintiff "need not show replacement by

someone with equivalent job qualifications. Instead, to

satisfy element (4), the plaintiff may demonstrate either that

'the employer did not treat age neutrally or that younger

persons were retained in the same position.'" LeBlanc, 6 F.3d

at 842 (quoting Hebert v. Mohawk  Rubber  Co., 872 F.2d 1104,

1111 (1st Cir. 1989)).

The district court granted summary judgment in

Overseas' favor because it found that Hidalgo had failed to

make out a prima facie case of age discrimination. Although

3. In his opposition to Overseas' summary judgment motion and
his surreply to Overseas' response to his opposition, Hidalgo
argued that his termination was not part of a reduction in
force; he failed even to articulate an argument addressing the
potentiality that his dismissal was part of a reduction in
force. In his appellate brief, Hidalgo, for the first time,
insists that even if his dismissal occurred as part of a
reduction in force scenario, Overseas did not treat age
neutrally. "It is well established that this court will not
consider an argument presented for the first time on appeal."
Villafane-Neriz v.  F.D.I.C., 75 F.3d 727, 734 (1st Cir. 1996);
see Poliquin v. Garden Way, Inc., 989 F.2d 527, 531 (1st Cir.
1993); Clauson v. Smith, 823 F.2d 660, 666 (1st Cir. 1987).
Because Hidalgo did not address the argument that his
termination constituted a reduction in force before the
district court, we will not consider his reduction of force
arguments on appeal. See Johnston v. Holiday Inns, Inc., 595
F.2d 890, 894 (1st Cir. 1979) (indicating that exceptions to
the general rule proscribing the assertion of arguments for the
first time on appeal exist only "'in horrendous cases where a
gross miscarriage of justice would occur'") (quoting Newark
Morning Ledger Co. v.  United States , 539 F.2d 929, 932 (3d Cir.
1976)). 

-9- 9

the court regarded this case as presenting a reduction in force

scenario, it considered whether Hidalgo's claim had merit under

the law governing a non-reduction in force scenario as well.

The district court concluded specifically that Overseas did not

have a continuing need for someone of Hidalgo's skills, that

Hidalgo failed to establish that Overseas did not treat age

neutrally, and that Overseas did not retain younger persons in

the same position. The court further ruled that Hidalgo failed

to "properly show he was 'replaced by a person with roughly

equivalent job qualifications.'" 

"While it is not clear to us that the court erred in

this regard, we prefer--because the question is so close--to

assume for present purposes that . . . [Hidalgo] did establish

a prima facie case within the McDonnell Douglas formulation."

LeBlanc, 6 F.3d at 844;  see  Pages-Cahue v.  Iberia Lineas Aereas

de Espana , 82 F.3d 533, 537 (1st Cir. 1996) (assuming, without

concluding, that plaintiff established a prima facie case

because doing so did not alter the ultimate outcome); Udo v.

Tomes, 54 F.3d 9, 13 (1st Cir. 1995) (same);  Mesnick, 950 F.2d

at 825 n.7 (same). Hidalgo lacks direct evidence that Overseas

terminated him because of his age, and the parties do not

dispute that he satisfied the first three of the four elements

-10- 10

necessary to establish a prima facie case under McDonnell

Douglas. 

With respect to the fourth element at issue in this

case, Hidalgo presented, and the district court accepted,

evidence that subsequent to his dismissal, Overseas assigned

certain accounts for which Hidalgo had been responsible to

other Overseas employees who handled them in addition to the

work they performed prior to his dismissal. Hidalgo also

submitted evidence that subsequent to his termination Overseas

informed certain of his former accounts of its desire to

"continue servicing" them "as heretofore." It seems plausible,

viewing Hidalgo's evidence concerning the servicing of his

accounts by other Overseas employees after September 1, 1993

and Overseas' communications to at least one of his former

accounts in the light most favorable to him, see LeBlanc, 6

F.3d at 841, that Overseas had a "'continued need for the same

services and skills'" that Hidalgo offered before his

termination, Kale, 861 F.2d at 760 (quoting Loeb, 600 F.2d at

1013); see also Keisling, 19 F.3d at 760 (quoting Loeb, 600

F.2d at 1013). Specifically, like the plaintiffs in Loeb,

4. The parties do not dispute that Hidalgo was at least forty
years of age, that he met Overseas' legitimate job performance
expectations, and that he experienced adverse employment
action.

5. We find  Loeb,  Kale, and  Keisling particularly persuasive in
this context because they constituted nonreduction of force
cases. Despite Overseas' contention and the district court's
ruling that this case actually entailed a reduction of force,

-11- 11

Kale, and Keisling, Hidalgo may well have met his burden

concerning the fourth element necessary to establish a prima

facie case under McDonnell  Douglas through evidence that

Hidalgo's "'job functions were absorbed by several different

employees of defendant.'" Kale, 861 F.2d at 760 (quoting  Loeb,

600 F.2d at 1013);  see  Keisling, 19 F.3d at 760. We recognize

we afford Hidalgo the benefit of the doubt for purposes of
argument and thus treat this as a nonreduction of force case.

6. In his Unsworn Declaration Under Penalty of Perjury, Rios
stated that "[n]obody performs the services that [Hidalgo] . .
. was performing or assumed his job responsibilities, as there
is no continued need for an individual of Mr. Hidalgo's skills
or who could provide the services he provided." This assertion
does not jibe with Rios' subsequent admission that certain
accounts for which Hidalgo had responsibility prior to his
termination "were assigned to other Overseas[] employees who
handle[d] them in addition to the work they performed before
the Condado [D]ivision was eliminated." Moreover, Hidalgo
presented testimony from employees of his former accounts
indicating that subsequent to his termination, Overseas
employees contacted them concerning these accounts. The fact
that certain of Hidalgo's former accounts were "handled" by
several other Overseas employees subsequent to his termination
would seem to satisfy the  McDonnell Douglas ' fourth requirement
for establishing a prima facie ADEA claim, at least as
interpreted in Loeb, Kale, and Keisling. We recognize that
LeBlanc stated specifically that "[a] discharged employee 'is
not replaced when another employee is assigned to perform the
plaintiff's duties in addition to other duties, or when the
work is redistributed among other existing employees already
performing related work.' Rather, '[a] person is replaced only
when another employee is hired or reassigned to perform
plaintiff's duties.'" LeBlanc, 6 F.3d at 846 (internal
citations omitted) (quoting Barnes v. Gencorp  Inc., 896 F.2d
1457, 1465 (6th Cir. 1990)); see Pages-Cahue v. Iberia Lineas
Aereas  de  Espana, 82 F.3d 533, 536 (1st Cir. 1996) (same).
LeBlanc,  Barnes and  Pages-Cahue, however, constituted reduction
of force cases, and, thus, the analytical construct they set
forth with respect to McDonnell  Douglas' fourth element does
not appear as persuasive as that of  Loeb,  Kale, and  Keisling in
a nonreduction of force scenario.

-12- 12

that this evidence is not overwhelming; however, as in  LeBlanc,

see 6 F.3d at 844, we assume, without concluding, that Hidalgo

has satisfied  McDonnell Douglas ' fourth element, mindful of the

fact that "'the burden of making out a prima facie case is 'not

onerous.'" Mesnick, 950 F.2d at 823 (1st Cir. 1991) (quoting

Texas Dep't  of Community Affairs v.  Burdine, 450 U.S. 248, 253

(1981)).

"Establishment of the prescribed prima facie case

creates a presumption that the employer engaged in

impermissible age discrimination." LeBlanc, 6 F.3d at 842.

Once a plaintiff has presented a prima facie case of

discrimination, the burden shifts to the defendant "to rebut

the presumption of discrimination by producing evidence that

the plaintiff was rejected . . . for a legitimate,

nondiscriminatory reason." Burdine, 450 U.S. at 254. "The

employer's burden at this stage is one of production; the

burden of persuasion remains plaintiff's at all times."

Lawrence v. Northrop  Corp., 980 F.2d 66, 69 (1st Cir. 1992).

The parties in this case do not dispute that Overseas met its

burden of production and offered non-discriminatory rationale

for its decision to terminate Hidalgo.

In rebutting Hidalgo's claim of age discrimination,

Overseas advanced two nondiscriminatory reasons for its

actions. First, Overseas indicated that it decided to

eliminate the Condado Division, and thus terminate Hidalgo's

-13- 13

position as president of the Division, because the Division had

become unprofitable since 1990. Second, according to Overseas,

"various insurance agents and brokers who placed policies with

Royal were complaining that the Condado Division, and

particularly Mr. Hidalgo, was interfering with some of its

[sic] clients. These actions affected Royal's business

relationship with these independent brokers and agents, some of

which were among the largest in Puerto Rico and responsible for

a substantial part of Royal's business."

"'If the defendant carries the burden of production,

the presumption raised by the prima facie cases is rebutted,'

and 'drops from the case.'" St.  Mary's  Honor  Ctr. v. Hicks,

509 U.S. 502, 507 (1993) (internal citations omitted) (quoting

Burdine, 450 U.S. at 255, 255 n.10). The plaintiff then

"retains the burden of persuasion." Burdine, 450 U.S. at 256.

"In the context of a summary judgment proceeding, Hicks

requires that, once the employer has advanced a legitimate,

nondiscriminatory basis for its adverse employment decision,

the plaintiff, before becoming entitled to bring the case

before the trier of fact, must show evidence sufficient for the

factfinder reasonably to conclude that the employer's decision

to discharge him . . . was wrongfully based on age." LeBlanc,

6 F.3d at 843; see Hicks, 509 U.S. at 515 ("[A] reason cannot

7. The Hicks decision, unlike this decision, derived from an
appeal of a bench trial.

-14- 14

be proved to be 'a pretext for discrimination' unless it is

shown both that the reason was false, and that discrimination

was the real reason."); Medina-Munoz v. R.J. Reynolds Tobacco

Co., 896 F.2d 5, 9 (1st Cir. 1988) ("[W]hen, as here, the

employer has articulated a presumptively legitimate reason for

discharging an employee, the latter must elucidate specific

facts which would enable a jury to find that the reason given

was not only a sham, but a sham intended to cover up the

employer's real motive: age discrimination."); Mesnick, 950

F.2d at 825 ("[I]n a case where the first two steps of the

McDonnell  Douglas pavane have been satisfactorily

choreographed, a plaintiff must offer  some minimally sufficient

evidence, direct or indirect, both of pretext and of the

employer's discriminatory animus to prevail in the face of a

properly drawn Rule 56 motion.") (emphasis added); see also

Sanchez v. Puerto  Rico  Oil  Co., 37 F.3d 712, 720 (1st Cir.

1994);  Woods v.  Friction Materials, Inc. , 30 F.3d 255, 260 (1st

Cir. 1994). Thus, Hidalgo "now must . . . demonstrate that the

proffered reason was not the true reason for the employment

decision. This burden now merges with the ultimate burden of

persuading the court that . . . [the plaintiff] has been the

victim of intentional discrimination." Burdine, 450 U.S. at

256; see Hicks, 509 U.S. at 511, 515. 

At this stage, "the  facts that comprised plaintiff's

prima facie case may be considered, but the inference of

-15- 15

discrimination originally attributable to those facts no longer

pertains." Sanchez, 37 F.3d at 720. "Direct or indirect

evidence of discriminatory motive may do, but 'the evidence as

a whole . . . must be sufficient for a reasonable factfinder to

infer that the employer's decision was motivated by age

animus.'" Goldman, 985 F.2d at 1117 (quoting Connell v. Bank

of Boston , 924 F.2d 1169, 1172 n.3 (1st Cir. 1991)),  quoted  in

LeBlanc, 6 F.3d at 843. "Thus, the plaintiff cannot avert

summary judgment if the record is devoid of adequate direct or

circumstantial evidence of discriminatory animus on the part of

the employer." LeBlanc, 6 F.3d at 843.

Hidalgo offered circumstantial evidence to

demonstrate both that Overseas' stated reasons for his

termination was pretextual and that it was pretext for

discriminatory age animus. While we find that Hidalgo failed

to produce evidence sufficient to meet his ultimate burden of

persuasion,  see  Burdine, 450 U.S. at 253, we present Hidalgo's

evidence in detail in light of his contention that the district

court failed to consider this evidence in the light most

favorable to his claim. In his Unsworn Declaration Upon

Penalty of Perjury, Hidalgo indicated that between 1984 and

1986, the net underwriting profit for the Condado Division

climbed from $249,803.00 to $422,826.00. Hidalgo did not

present figures for the period after 1988, when the Overseas

and Condado operations merged, because, according to Hidalgo,

-16- 16

Overseas failed to make these figures available upon his

request. Yet, he did state in his Unsworn Declaration that

Overseas underestimated the profitability of the Condado

Division since 1990. Hidalgo contends that Overseas' failure

to provide the figures concerning the profitability of the

Condado Division, combined with his testimony concerning

additional profits stemming from the Division, suffices to

demonstrate pretext on Overseas' part. 

Hidalgo also submitted two communications from his

supervisor, Ramon Lozada, dated April 10, 1991 and January 16,

1993, as proof of Overseas' enthusiasm for Hidalgo's work as

president of the Condado Division and its belief that his

prospects with Overseas were excellent. In addition, Hidalgo

declared in his Unsworn Declaration that as a member of the

Overseas Board of Directors, he was present at a March 25, 1993

meeting during which the alleged unprofitability of the Condado

Division was never discussed. Hidalgo also stated in his

Unsworn Declaration that it was not until he informed Overseas

that he did not intend to retire on September 1 that Overseas

informed him that his termination constituted part of a plan to

eliminate the Condado Division effective September 1. 

Hidalgo offered evidence that immediately after his

dismissal and the elimination of the Condado Division,

Rodriguez on several occasions performed some of the tasks that

she previously had performed as his assistant. According to

-17- 17

Hidalgo, this activity, considered in conjunction with the fact

that certain accounts for which he previously was responsible

remained with Overseas and were attended to by other Overseas

employees after his dismissal, demonstrated that the Condado

Division "continued to function as before, albeit under a

different name." Hidalgo insists that this evidence

"combine[d] to prove that defendant's alleged reason, a

decision to close the Condado Division, was a sham, masking

defendant's illegal age discrimination." 

Hidalgo finally maintains that Overseas never

informed him of the alleged complaints of brokers and agents

concerning his interference with their business. Instead,

Hidalgo offered an evaluation of his work that Lozada prepared

on January 16, 1993 (slightly more than two months before Rios

informed him that Overseas expected him to retire effective

September 1) in which he received the best possible ratings in

all categories, including the category labeled: "How

successful is he in getting along with people in his day-to-day

work relationships?" In fact, the evaluation indicated that he

"stands out as being among the best . . . known" and that he

"will qualify for advancement beyond the next higher job

classification or level of responsibility." Hidalgo insists

that this evidence "raises a genuine issue of fact as to

-18- 18

whether age discrimination motivated the retirement or the

dismissal decision of defendant."

We doubt that the evidence that Hidalgo submitted,

taken in the light most favorable to his claim,  see  LeBlanc, 6

F.3d at 841, demonstrates that Overseas' asserted reasons for

dismissing him were pretextual, see Lehman v. Prudential Ins.

Co.  of  Am., 74 F.3d 323, 330 (1st Cir. 1996). We note,

however, that Hidalgo cites Mulero-Rodriguez to support his

pretext argument. In Mulero-Rodriguez, the plaintiff, a

director of the defendant corporation, stated in his deposition

testimony that the defendant never informed him of its

dissatisfaction with his ability to assure an inventory level

8. Overseas argues that much of the evidence Hidalgo submits
to demonstrate pretext and age-based animus fails to comply
with the requirements of Fed. R. Civ. P. 56(e) and thus should
not be considered on appeal. Overseas also contends that much
of this evidence was untimely presented to the district court.
Given the ultimate disposition of this appeal, we deem it
unnecessary to address these arguments. We assume for the sake
of argument, without concluding, that the evidence Hidalgo
submitted satisfies the minimum requirements of Rule 56(e).

9. In addition to Mulero-Rodriguez, Hidalgo cites Hebert and
Woodman v.  Haemonetics Corp. , 51 F.3d 1087 (1st Cir. 1995), to
support his contention that the evidence he submitted sufficed
to demonstrate a material issue of fact concerning pretext. In
these cases, however, the evidence that the plaintiffs
submitted to demonstrate pretext was far more extensive and far
more persuasive than the evidence Hidalgo presents in this
instance. See Woodman, 51 F.3d at 1093 (discussing not only
performance evaluations but also defendant's admission of
disfavoring older employers as creating a reasonable inference
of pretext for intentional age discrimination); Hebert, 872
F.2d at 1115 (listing employer's failure to inform plaintiff of
adverse feedback on his work as only one of many pieces of
circumstantial evidence that the plaintiff submitted in
addition to statistical evidence). 

-19- 19

necessary for the smooth operation of the business. See 98

F.3d at 675. The plaintiff also indicated that the defendant

failed to produce "business records in any way reflecting a

shortage [of inventory] or lost sales or income based thereon."

Id. Considering only this evidence, the  Mulero-Rodriguez court

determined, "giving credence to [the plaintiff's] . . .

testimony," that the issue of pretext "should be left to the

factfinders." Id.

Much like the plaintiff in  Mulero-Rodriguez, Hidalgo

testified in his Unsworn Declaration both that Overseas never

informed him of the alleged complaints against him and that

Overseas failed to produce any business records supporting its

allegation of the Condado Division's unprofitability. While we

doubt that these similarities suffice to demonstrate pretext on

Overseas' part, we recognize that this is a close call and,

therefore, we assume, without deciding, that Hidalgo

established pretext. See  Udo, 54 F.3d at 13 (assuming  arguendo

that employer's action was pretextual). We thus "turn directly

to the question of whether [Hidalgo] . . . can show that the

real reason [for his dismissal] was age discrimination." Id.

at 676.

In this case, "even if [Hidalgo] . . . fashioned a

triable issue as to pretext, there was . . . no 'significantly

probative' evidence to show that the pretext masked age

discrimination." Medina-Munoz, 896 F.2d at 9 (quoting  Anderson

-20- 20

v.  Liberty Lobby, Inc. , 477 U.S. 242, 249-50 (1986)). Hidalgo

offered no evidence that reasonably could be construed to

indicate that Overseas intended to discriminate against him

because of his age. None of Hidalgo's evidence concerning

either the profitability of the Condado Division or Overseas'

failure to inform him of the alleged complaints against him by

brokers and agents points to any age  related  animus on

Overseas' behalf. Similarly, the evidence concerning the

ongoing servicing of Hidalgo's former accounts by Overseas

employees, including Rodriguez's work on these accounts, and

Overseas' apparent satisfaction with his performance, though

perhaps indicative of pretext on Overseas' part, does not

evidence any  age-based discriminatory intent . As we previously

have stated, "[t]he 'ADEA does not stop a company from

discharging an employee for any reason (fair or unfair) or for

no reason, so long as the decision to fire does not stem from

the person's age.' Courts may not sit as super personnel

departments, assessing the merits--or even the rationality--of

employers' nondiscriminatory business decisions."  Mesnick, 950

F.2d at 825 (internal citations omitted) (quoting  Freeman, 865

F.2d at 1341).

The only circumstantial evidence that Hidalgo sets

forth bearing upon Overseas' regard for his age comprises the

memorandum Rios sent to him on March 29, 1993 informing him

that Overseas, "[i]n accordance with the company's established

-21- 21

guidelines . . . fully expect[ed]" him to retire when he became

eligible for normal retirement benefits on September 1, 1993.

Hidalgo makes much of this letter in light of the Royal

Retirement Plan's provision that despite the fact that Royal

employees' "Normal Retirement Date" was the first day of the

month after they turned sixty-five, if an employee "decide[d]

to continue working past [his] . . . Normal Retirement Date,

[he could] . . . do so." 

This evidence does not "raise a genuine issue of fact

as to whether discrimination motivated the adverse employment

action." Olivera v. Nestle  P.R.,  Inc., 922 F.2d 43, 50 (1st

Cir. 1990). The reasonable inference,  see  Mulero-Rodriguez, 98

F.3d at 672, deriving from this evidence is that Overseas

expected its employees to retire when they became eligible for

normal retirement benefits at the age of sixty-five. The Royal

Retirement Plan indicates that the normal retirement date for

Overseas employees falls at or near their sixty-fifth birthday.

Overseas' March 29 letter to Hidalgo indicated its expectation

that Hidalgo would retire on or near his Normal Retirement

Date. We thus do not believe that the March 29 letter

constituted "'significantly probative,'"  Medina-Munoz, 896 F.2d

at 9 (quoting Anderson, 477 U.S. at 249-50), "probative,"

Sanchez, 37 F.3d at 720, "adequate,"  Mulero-Rodriguez, 98 F.3d

at 673, "sufficient," LeBlanc, 6 F.3d at 849, or even

"minimally sufficient," Vega, 3 F.3d at 479, circumstantial

-22- 22

evidence to permit a reasonable jury to find discriminatory

animus on Overseas' part, see Lehman, 74 F.3d at 330

(concluding that the plaintiff's "evidence, taken at its best,

was insufficient to show that . . . [the defendant] was

motivated by age discrimination");  see  also  LeBlanc, 6 F.3d at

846-49;  Goldman, 985 F.2d at 119-21;  Mesnick, 950 F.2d at 826;

Menard v.  First Sec. Servs. Corp. , 848 F.2d 281, 289 (1st Cir.

1988). In our view, the fact that Overseas expected Hidalgo to

retire when he became eligible for his normal retirement

benefits would not permit a jury determination that Overseas

was motivated by age animus when it decided to dismiss Hidalgo.

See Udo, 54 F.3d at 14 (finding letter employer sent to

employee informing him that employer expected him to retire

when he turned sixty-five did not evidence age animus on

employer's behalf). 

When considered in the context of the record evidence

as a whole, see Connell, 924 F.2d at 1172 n.3; see also

Goldman, 985 F.2d at 1119 ("[T]he totality of the circumstances

must permit a reasonable inference that the employer's

justification for the challenged action was pretext for age

discrimination."), viewed in the light most favorable to

Hidalgo, see LeBlanc, 6 F.3d at 841, the March 29 letter and

the Royal Retirement Plan still would not suffice to allow a

jury reasonably to find that Overseas exhibited age-based

animus in this case. Overseas sent Hidalgo the letter

-23- 23

concerning its expectation that he retire on his Normal

Retirement Date more than five months prior to his sixty-fifth

birthday and repeatedly declared its intention to take no

action that would interfere with his ability to qualify for

normal retirement benefits. On July 2, 1993, Overseas

explained to Hidalgo its independent business decision to

eliminate the Condado Division effective September 1, 1993,

which accommodated the full vesting of his pension plan.

Despite its decision to eliminate the Condado Division, on

August 19, 1993, Overseas offered to employ Hidalgo as an

independent producer, with compensation based on commission and

bonuses. Hidalgo rejected these offers, and, on September 1,

Overseas implemented the plan it had enunciated to Hidalgo on

July 2 to eliminate the Condado Division as a separate entity.

Contrary to Hidalgo's assertions, we believe the only

inference that the evidence in the record supports, without

improper speculation on our part, is that Overseas simply timed

its elimination of the Condado Division to dovetail with

Hidalgo's Normal Retirement Date. This would be entirely

appropriate. See Goldman, 985 F.2d at 1118 n.4 ("[A] 'mere

showing that the employer's articulated reason may shield

another (possibly nondiscriminatory) reason does not create a

dispute of material fact' sufficient to withstand summary

judgment.");  Mesnick, 950 F.2d at 825;  see  also  Udo, 54 F.3d at

14 (finding letter expressing employer's expectation that

-24- 24

employee would retire at age sixty-five insufficient evidence

of discriminatory age animus to withstand summary judgment

where employer subsequently articulated nondiscriminatory

rationale for dismissing employee). 

As we previously have noted, "the material creating

the factual dispute must herald the existence of 'definite,

competent evidence' fortifying the plaintiff's version of the

truth. Optimistic conjecture . . . or hopeful surmise will not

suffice." Vega, 3 F.3d at 479 (internal citations omitted)

(quoting Mesnick, 950 F.2d at 822). In this case, Hidalgo's

arguments "are based largely upon . . . improbable inferences[]

and unsupported speculation,"  LeBlanc, 6 F.3d at 849, and thus

fall short. In light of the evidence in the record, viewed in

the light most favorable to Hidalgo, we do not believe that a

trier of fact could conclude that Overseas unlawfully

discriminated against Hidalgo. We thus affirm the district

court's award of summary judgment in favor of Overseas.

Costs to Appellee.

-25- 25