JAMES A. MESKELL *vs.* GLADYS R. MESKELL.

Plymouth.   October 11, 1968. — January 6, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & REARDON, JJ.

*Trust*, Resulting trust, Constructive trust. *Fraud. Fiduciary. Equity Pleading and Practice*, Bill, Demurrer, Amendment.

Upon appeal from an interlocutory decree sustaining a demurrer to a bill in equity on some of the grounds stated in the demurrer, all grounds stated were open. [149]

The bill in a suit in equity to establish trusts in certain real estate and shares of stock, although it was not devoid of irrelevant and confusing allegations, was not demurrable on the ground that it did not state a case with sufficient clarity and detail. [149]

Where it appeared from the bill in a suit in equity by a brother who survived his two brothers and his sister that each of the four had inherited a one-quarter undivided interest in the family homestead, that the three brothers had agreed to sign over their interests to the sister upon her agreement that they could continue to reside there as long as they lived, and that the four had voluntarily conveyed their interests to a straw, further allegations in the bill were not sufficient to establish a resulting trust in the property for the plaintiff's benefit, although the straw had conveyed the property to the sister and one of the plaintiff's brothers, the husband of the defendant, as joint tenants, and the plaintiff had believed that his sister was the sole owner and had not known of the joint tenancy, and after the sister's death the defendant's husband had placed the property in a tenancy by the entirety of himself and the defendant [150]; nor was a constructive trust in the property in favor of the plaintiff established by the bill, either on the ground of fraud, since the allegations did not show that at the time of the conveyance by the plaintiff the sister and the defendant's husband had not intended to let their brothers reside in the property, or on the ground of breach of a confidential or fiduciary relationship [151–152].

Allegations in the bill in a suit in equity merely that stock owned by the plaintiff's sister was divided equally among the plaintiff and his

two brothers upon her death, that one third of the new stock issued was placed in the names of the plaintiff's two brothers jointly, and that following the death of one of such two joint owners the survivor told the plaintiff that he would be given "his" share of the deceased brother's stock did not establish any trust in such stock for the benefit of the plaintiff, and he was not entitled to any relief against the defendant, the widow of the survivor. [152–153]

Nothing in the record of a suit in equity to establish trusts in certain property for the plaintiff's benefit indicated that the judge wrongly exercised his discretion in denying a motion to amend the bill following sustaining of a demurrer thereto. [153]

BILL IN EQUITY filed in the Superior Court on February 16, 1967.

A demurrer to the bill was sustained by *Taveira, J.*, and a motion to amend the bill was denied by *Brogna, J.*

*Harry J. O'Sullivan*, for the plaintiff, submitted a brief.

No argument or brief for the defendant.

SPALDING, J. From interlocutory decrees sustaining the defendant's demurrer to the plaintiff's bill and denying his motion to amend, the plaintiff appealed. He also appealed from the final decree dismissing his bill.

The demurrer set forth the following grounds: (1) the bill did not state a case for equitable relief; (2) the allegations do not disclose with clearness the case intended to be set forth; and (3) the plaintiff was guilty of laches. Although the judge sustained the demurrer on the first two grounds, all three are open on appeal. *Ratté* v. *Forand*, 299 Mass. 185, 187. *Arena* v. *Erler*, 300 Mass. 144, 145.

1. We shall deal first with the ground (the second) that the bill is lacking in clarity. A bill, of course, must contain a clear and brief statement of the material facts and circumstances relied on by the plaintiff in order that the defendant may make an intelligent defence to the bill. G. L. c. 214, § 12. *Carson* v. *Gikas*, 321 Mass. 468, 469–470. Although the bill is not devoid of irrelevant and confusing allegations, we are of opinion that it states a case with sufficient clarity and detail. See *Buckley* v. *John*, 314 Mass. 719, 724.

2. We turn to the first ground, which alleges that the bill failed to state a case for equitable relief. The bill,

according to the plaintiff, seeks to establish a resulting trust in certain real estate and to impose a constructive trust with respect to certain shares of stock. Since the allegations with respect to the real estate and the stock are quite different, it will be convenient to discuss each separately.

## THE REAL ESTATE.

The allegations as to this aspect of the bill are as follows: In 1943 the plaintiff, his sister Mary, and his two brothers, Thomas and Edward, each inherited a one-quarter undivided interest in the family homestead. Thereafter the three brothers agreed to sign over their interests to Mary, who in turn agreed that the brothers could continue to live in the house as long as they lived. The four children conveyed the property to a straw, who then gave a deed back to Mary, the oldest surviving child, and Edward, the youngest, as joint tenants. The plaintiff believed that Mary was the sole owner and did not know of the joint ownership. Mary and Thomas died in 1958 and 1961, respectively. Thereafter the plaintiff did minor repairs on the premises after receiving assurances from Edward that the plaintiff owned half the house. After Edward's death in 1966 the plaintiff learned that in 1961 Edward had placed the real estate in the names of himself and his wife as tenants by the entirety. The defendant, Edward's wife, now claims to be the sole owner of this property.

The bill's allegations are not sufficient to prove the existence of a resulting trust. A resulting trust typically arises when a transfer of property is made to one person and the purchase price is paid by another; in such a case a trust results in favor of the person who furnished the consideration. *Howe* v. *Howe,* 199 Mass. 598, 600–601. *Quinn* v. *Quinn,* 260 Mass. 494, 497. *Checovich* v. *Checovich,* 339 Mass. 71, 73. Restatement 2d: Trusts, § 440. The case at bar, however, is distinguishable, since the plaintiff voluntarily transferred an undivided interest in the realty itself, not money. By the great weight of authority no

resulting trust arises in these circumstances. For example, in *Howe* v. *Howe,* 199 Mass. 598, 602, we said that a resulting trust "cannot be implied when the conveyance is voluntary, without the payment of any purchase price." No resulting trust arises in a transfer from A to B merely because the transfer was gratuitous, even if B orally promised to hold the land in trust. Restatement 2d: Trusts, § 411, comment o. Scott, Trusts (3d ed.) § 411.8.[1]

It remains to consider whether there was a constructive trust. See Restatement 2d: Trusts, §§ 44 (1) and 411, comment o. Such a trust is imposed "in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property was obtained by *fraud* or *in violation of a fiduciary relation* or where information confidentially given or acquired was used to the advantage of the recipient at the expense of the one who disclosed the information" (emphasis supplied). *Barry* v. *Covich,* 332 Mass. 338, 342. See Restatement 2d: Trusts, § 44 (1). The fraud required to create a constructive trust must occur at the time the property was transferred; a subsequent refusal to carry out an oral promise, standing by itself, is not fraud. *Hazleton* v. *Lewis,* 267 Mass. 533, 538. *Ranicar* v. *Goodwin,* 326 Mass. 710, 713. The plaintiff's allegations are not sufficient to show that at the time of the transfer either Edward or Mary did not intend to carry out the promise.

The allegations also do not show that there was a violation of a fiduciary or confidential relationship. "Mere respect for the judgment of another or trust in his character is not enough to constitute . . . a [confidential] relation." *Comstock* v. *Livingston,* 210 Mass. 581, 584. The allegations show that the three brothers and Mary agreed that they all could live on the premises as long as they lived. According to some authorities, this by itself might have been sufficient to establish a confidential relationship between

---

[1] Section 455 of Restatement 2d indicates that when A pays B in land rather than in money, for other real estate which is conveyed to C, A can enforce a resulting trust. That is not the situation before us.

the plaintiff and Edward since such a relationship exists when, "because of family relationship or otherwise, the transferor is in fact accustomed to be guided by the judgment of the transferee or is justified in placing confidence in the belief that the transferee will act in the interest of the transferor." Restatement 2d: Trusts, § 44, comment c. But under our decisions a confidential relationship does not arise merely because the conveyance was made between members of the family, even if the transferee promised to hold the land in trust. *Ranicar* v. *Goodwin*, 326 Mass. 710, 713–714, and cases cited. Compare *Samia* v. *Central Oil Co. of Worcester*, 339 Mass. 101, 112, where factors in addition to the family relationship indicated that a confidential or fiduciary relationship existed. We therefore hold that the allegations are not sufficient to establish either a constructive or a resulting trust in the real estate.

## The Shares of Stock.

The plaintiff also argues that his bill established a constructive trust in certain shares of stock. According to the bill's allegations, the stock that Mary owned was divided equally among the three brothers after she died in 1958. Edward, the administrator of her estate, had the new stock certificates issued respectively in the joint names of Thomas and Edward, the plaintiff and Edward, and Edward and his wife. It is alleged that Thomas and Edward were joint tenants. Following Thomas's death in 1961 the plaintiff requested that he be given "his" share of Thomas's stock by Edward, and Edward allegedly agreed to do so "when things were straightened out." But his wife, the defendant, now claims sole ownership of all the stock Thomas inherited from Mary.[2]

The facts are not sufficient to establish any kind of a trust for the benefit of the plaintiff. The bill does not

---

[2] This stock is the only stock in question here. The one-third portion of Mary's stock which the *plaintiff* received as a joint owner with Edward is not involved.

show why the plaintiff is now entitled to any interest in Thomas's shares. For aught that appears, Thomas may have voluntarily given Edward the joint tenancy in Thomas's stock. In such a case Edward would have become the sole owner of the stock on the death of Thomas. Although the plaintiff would have received some of the stock if Thomas had been the sole owner (assuming that he died intestate), that was not the situation here, for the stock, according to the allegations, was jointly owned. The bill, therefore, fails to show that the plaintiff had any enforceable right in the stock.

3. The plaintiff also appealed from the denial of his motion for leave to amend his bill. The allowance of this amendment rested in the sound discretion of the judge. *Foster* v. *Shubert Holding Co.* 316 Mass. 470, 477. Although matters of discretion are reviewable on an appeal in equity, this court will give weight to the judge's exercise of discretion. *Hill* v. *Trustees of Glenwood Cemetery*, 323 Mass. 388, 394. Nothing in the record indicates that the judge wrongly exercised his discretion in denying the motion to amend.

> *Interlocutory decrees affirmed.*
> *Final decree affirmed with*
> *costs of appeal.*