Fortin *v.* Roman Catholic Bishop of Worcester.

RONALD FORTIN[1] & another[2] *vs.* ROMAN CATHOLIC
BISHOP OF WORCESTER.

Worcester. September 9, 1993. - January 14, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Religion. Constitutional Law,* Freedom of religion. *Jurisdiction,* Ecclesiastical controversy. *Practice, Civil,* Summary judgment, Appeal. *Trust,* Resulting trust, Constructive trust.

The First Amendment to the United States Constitution required dismissal of certain "promise-based claims" by members of a Roman Catholic parish against the bishop of the diocese in which the parish was located, arising from an alleged promise by the bishop to the parishioners that he would not close the parish if the parishioners raised sufficient funds to repair the church building, where a civil court's inquiry into such a promise would have been an impermissible intrusion into the bishop's ecclesiastical authority. [785]

In the circumstances of a dispute between members of a Roman Catholic parish and the bishop of the diocese in which the parish was located, the question of the ownership of the parish's real and personal property was capable of resolution under objective, well-established concepts of trust and property; hence this court did not determine the applicability of the traditional approach in Massachusetts cases of focusing on the distinction between congregational and hierarchical churches in the treatment of ecclesiastical disputes. [785-788]

On claims by members of a Roman Catholic parish that they were the equitable owners of the property of the parish under theories of resulting trust or constructive trust and that the bishop of the diocese was liable to them for conversion, summary judgment in favor of the bishop was appropriate where the parishioners failed to allege any supportable fact indicating that the bishop did not hold all legal and beneficial interest in the property. [788-790]

[1]As a member of the Church of St. Joseph's Committee, on behalf of himself, the other members of the committee, and the members of St. Joseph's parish.

[2]David Desroches, individually and as chairman of the Committee to Save St. Joseph's Church, and on behalf of the other members of St. Joseph's Church.

CIVIL ACTION commenced in the Superior Court Department on June 1, 1992.

The case was heard by *Charles M. Grabau*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Stephen Gordon* (*Roberta Fitzsimmons* with him) for the plaintiffs.

*Samuel R. DeSimone* (*Dale R. Harger* with him) for the defendant.

LIACOS, C.J. This case presents a dispute between two parishioners of the former parish of St. Joseph's Church in Worcester and the Roman Catholic Bishop of Worcester (Bishop). On June 1, 1992, the parish of St. Joseph's was merged with the parish of Notre Dame, in accordance with a decision by the Bishop. In a complaint of the same date, the plaintiffs alleged that the Bishop's decision to merge the parishes wrongfully deprived them of property to which they were equitably entitled, and constituted a breach of an oral contract between the Bishop and the plaintiffs. They sought an injunction prohibiting the Bishop from taking any action in regard to the real and personal property of St. Joseph's Church. They also sought an order of specific performance of the alleged oral contract and damages, and declaratory relief.

The Bishop responded to the plaintiffs' complaint with a motion for summary judgment. The Bishop advanced three main arguments why he was entitled to judgment: (1) the First Amendment to the United States Constitution prohibited a civil court from taking jurisdiction over the matter; (2) the plaintiffs lacked standing to maintain the action; and (3) the plaintiffs could not prevail on the merits on any of their legal claims. A judge in the Superior Court found that the First Amendment imposed no restraints on the court's jurisdiction, but he allowed the Bishop's motion, based on his conclusion that the plaintiffs could not prevail on any of their legal claims. The plaintiffs filed a timely appeal, and we transferred the case here on our own motion. We agree with

the judge below that the Bishop was entitled to summary judgment, although we hold that the court lacked subject matter jurisdiction over some of the parishioners' claims.

We begin with the undisputed facts established by the plaintiffs. On September 26, 1886, the Church of St. Joseph was established in the Wall Street area of Worcester. The founding members were the pastor, Father Brouillet, and five communicants. Shortly thereafter, a church school was established. By June of 1887, an effort was undertaken to build a church that would replace the original chapel. In December, 1890, St. Joseph's parish was established. In May, 1891, St. Joseph's parish purchased a parcel of land on Wall Street, on which the members of the St. Joseph's parish voted to construct a new church and other facilities. Members of the parish financed the project completely.

Early in this century, two tracts of land bounded by Hamilton, Dupont, Chrome, and Plantation Streets in Worcester (Hamilton Street property) were conveyed to the Bishop of Springfield, in whose diocese St. Joseph's Church belonged. The Bishop of Springfield then conveyed this land to the St. Joseph's School of Worcester Corporation. Parishioners formed the School Corporation in 1914 to hold title to parish real estate and to manage the internal affairs of the parish.

In 1927, the School Corporation reconveyed the parcel to the Bishop of Springfield, retaining only a parcel at the corner of Chrome and Plantation Streets. The School Corporation and the Bishop of Springfield then jointly mortgaged both parcels as security for a $325,000 note to build a new church on the property. The parishioners funded the construction of the building, which cost over $1,000,000. This structure served as the parishioners' house of worship until the Bishop's decision to merge St. Joseph's with another parish took effect.

The General Court created the Roman Catholic Bishop of Worcester as a corporation sole in 1950. St. 1950, c. 197. Thereafter, the Bishop of Springfield conveyed, by an omnibus deed, all of the property situated in the diocese of Worcester to the Bishop of Worcester. In 1958, the treasurer

of the School Corporation signed a deed which conveyed the corner parcel of the Hamilton Street property to the Bishop of Worcester. At this time (and until the present day) the Bishop held legal title to all the property at issue in this dispute.

In May of 1991, the Bishop met with the pastor of St. Joseph's and certain parish members to discuss some structural problems that had developed with the church building. The following month, a representative of the Bishop, Monsignor Tinsley, met with the parishioners and allegedly told them that if they raised one-half of the funds needed to repair the church, the diocese would lend the parishioners the remaining funds, and the church would remain open.

The plaintiffs claim to have raised pledges of over $600,000. The Bishop nonetheless decided to merge St. Joseph's with another Roman Catholic parish in Worcester, Notre Dame. The new parish, Notre Dame-St. Joseph, controls the property of both former parishes and uses the facilities of the former Notre Dame as the sole place of worship for the merged parishes.

1. *The plaintiffs' claims.* On the date that the merger took effect, June 1, 1992, the plaintiffs commenced this action. The numerous causes of action (which were not divided into counts in the complaint) derive from two basic assertions by the plaintiffs. The first is that the plaintiffs are the equitable owners of the real estate and personalty of St. Joseph's parish. Conceding that the Bishop holds legal title to all of the property in question, the plaintiffs claim to be equitable owners under a theory of resulting trust or constructive trust.[3] Based on their claim that they equitably own the property,

---

[3]As a corollary to their argument that they are equitable owners of the property, the plaintiffs devote much attention to the issue of their status as a corporate entity, either as successors to some original corporation (the existence of which is challenged by the defendant) or as successors to the School Corporation. In deciding that summary judgment was appropriate on the counts arising under a resulting or constructive trust theory, the judge below appears to have based his conclusion on his determination that the plaintiffs lacked corporate status. In our view, the questions whether these corporations exist and whether the plaintiffs succeed to the interests

the plaintiffs further claim that the Bishop is liable to them for conversion. We shall refer to these claims as "the ownership claims."

The second basic assertion is that the Bishop breached his promise to the plaintiffs that he would not close the parish if the parishioners raised sufficient funds to repair the church. Emanating from this are claims of breach of contract and promissory estoppel and requests for specific performance and damages. We shall refer to these as the "promise-based claims."

2. *Jurisdiction.* The first question facing the judge below and facing this court today is whether this dispute properly belongs in the civil courts of the Commonwealth. The judge below held that he had "jurisdiction to hear the present action." We believe this conclusion sweeps too broadly.

We begin our discussion with the long-recognized principle that "the First Amendment prohibits civil courts from intervening in disputes concerning religious doctrine, discipline, faith, or internal organization." *Alberts* v. *Devine*, 395 Mass. 59, 72, cert. denied sub nom. *Carroll* v. *Alberts*, 474 U.S. 1013 (1985), and cases cited. As to the plaintiffs' promise-based claims, the judge below ought not to have looked beyond this principle to dismiss those counts. To inquire into an alleged promise by the Bishop to keep a parish open or refrain from merging it with another parish was an impermissible intrusion into the Bishop's ecclesiastical authority. See *Serbian E. Orthodox Diocese for the U.S. & Can.* v. *Milivojevich*, 426 U.S. 696, 708-709 (1976). See also *Parent* v. *Roman Catholic Bishop of Portland*, 436 A.2d 888, 890-891 (Me. 1981) (no jurisdiction over dispute regarding Bishop's alleged promise to provide church services).

As to the plaintiffs' ownership claims, such a cursory review is not warranted. Although "the First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes," *Wheeler* v. *Roman*

---

of either of them are not material ones, because, as we shall discuss below, the Bishop is both the legal and beneficial owner of the property.

*Catholic Archdiocese of Boston*, 378 Mass. 58, 63, cert. denied, 444 U.S. 899 (1979), quoting *Presbyterian Church* v. *Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 449 (1969), this circumscription is not absolute, and courts have recognized instances where civil resolution of church property disputes may occur without offense to the First Amendment. Probably the most notable departure from the traditional notion that civil courts ought not resolve church property disputes came with *Jones* v. *Wolf*, 443 U.S. 595, 602 (1979). In that case, the United States Supreme Court held that States are constitutionally entitled to adopt "neutral principles of law" to resolve church property disputes. *Id.* at 602-603. Thus, if a dispute can be resolved without inquiry into matters of religious doctrine or polity, a court may examine such sources as "(a) statutory provisions governing the holding of property by religious corporations; (b) the constitutions and by-laws of the religious organizations involved, especially in so far as they pertain to the ownership and control of church property; and (c) the deeds to the property in question," to resolve the dispute. *Antioch Temple, Inc.* v. *Parekh*, 383 Mass. 854, 867 (1981), citing *Jones* v. *Wolf*, *supra* at 599-601. This court has never expressly taken the "neutral principles of law" approach to a church property dispute.

As an alternative, this court has, in the past, focused primarily on the distinction between hierarchical and congregational church structures in determining when jurisdiction is appropriate.[4] See *Antioch Temple, Inc.*, *supra* at 860-864; *Wheeler*, *supra* at 61-62. The Supreme Court has recognized the validity of this distinction. See *Jones* v. *Wolf*, *supra* at 602; *Serbian E. Orthodox Diocese for the U.S. & Can.*, *supra* at 724-725; *Watson* v. *Jones*, 80 U.S. (13 Wall.) 679, 733-734 (1871). We have noted that "[i]t is in disputes involving hierarchical churches that civil courts must tread

---

[4]For an explanation of the basic differences between the structures, see *Wheeler* v. *Roman Catholic Archdiocese of Boston*, 378 Mass. 58, 62 n.2, cert. denied, 444 U.S. 899 (1979). See also *Antioch Temple, Inc.* v. *Parekh*, 383 Mass. 854, 860-861 (1981).

more cautiously, for the First Amendment 'permits hierarchical [churches] to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters.' " *Antioch Temple, Inc., supra* at 861, quoting *Wheeler, supra* at 61.

The judge below did not inquire into the question of church structure, reasoning that *Jones* v. *Wolf, supra,* "essentially . . . overturned" *Wheeler.* In our view this position overstates the holding of *Jones* v. *Wolf.* As the Bishop correctly notes, *Jones* v. *Wolf, supra,* does not constitutionally *obligate* courts to employ the neutral principles approach. Rather, it allows courts to do so without violating the First Amendment. Additionally, our decision in *Antioch Temple, Inc., supra,* makes it clear that this court has not chosen to adopt the "neutral principles" approach exclusively. *Id.* at 867-868. We need not adopt this approach in this case as the exclusive approach to such disputes in the future.

The Bishop is correct when he states that, if we considered the present dispute only in terms of the traditional structural approach, we would not take jurisdiction. This is so because (1) the Roman Catholic Church is hierarchical and (2) it maintains an internal system of tribunals for resolution of disputes. Such facts were presented in a sworn affidavit of the Bishop which was appended to his motion for summary judgment. See also *Wheeler, supra* at 62.[5] If taking jurisdic-

---

[5] We pause here to address an issue which arose after the briefs in this case were filed and which pertains to this issue. Around the time of oral argument, the plaintiffs filed a motion requesting that we vacate the judgment and a motion to remand the case to the Superior Court for further proceedings, on the ground that they had obtained evidence tending to show that certain representations made in the Bishop's affidavit in regard to the structure of the church were contradicted by certain statements made in court documents in an unrelated tort case involving the Bishop. Even assuming that the plaintiffs' motion was properly made under Mass. R. Civ. P. 60 (b) (2) and (6), 365 Mass. 828 (1974), it is clear that the new "evidence," at best, goes toward establishing that the Roman Catholic Church is not hierarchical. Jurisdictionally, this would favor the plaintiffs, i.e., less of an obstacle would be posed to the court's authority to hear the case. See *Wheeler, supra* at 61. Given our conclusion that it was permissible for the judge to take jurisdiction over the ownership claims (and the

tion is proper, then, it must be so under the neutral principles of law approach. Thus, we must be able to resolve the dispute without entangling ourselves in questions of religious doctrine, polity, and practice, and rely instead on objective, well-established concepts of trust and property law. See *Jones* v. *Wolf, supra* at 604. In the circumstances of this case, we believe the question of ownership properly may be resolved under such principles, and hence we need not determine whether the traditional approach of Massachusetts cases distinguishing the treatment of disputes in congregational and hierarchical churches need be applied.

3. *Application of neutral principles of law to the plaintiffs' claims of ownership.* In allowing the Bishop's motion for summary judgment, the judge below dismissed the ownership claims because the plaintiffs had failed to show that they were the successors in interest to any beneficial interest that either the original corporation (if one existed) or the School Corporation retained in the property. In our view, the same conclusion (i.e., that summary judgment was appropriate) is more easily reached by the determination that the plaintiffs have failed to allege any supportable fact indicating that the Bishop does not hold all legal and beneficial interest in the property. The judge's ruling that the plaintiffs would not succeed to any interest not held by the Bishop, is therefore a secondary, but equally sustainable basis for the allowance of the Bishop's motion for summary judgment.

Under the neutral principles of law approach, we may examine any relevant statute, the deeds to the property in question, and any pertinent constitutions or by-laws of the organizations involved. *Antioch Temple, Inc., supra* at 867. We begin, then, by noting that the Bishop holds record title to all of the disputed property. The question we must consider is whether the facts as shown of record on the motion for summary judgment could support their claim of equitable owner-

---

fact that the "evidence" in no way concerns the jurisdictional problem with the promised-based claims), we therefore deny the motions.

ship. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711-712 (1991).

There is no basis for the plaintiffs' claim that a resulting trust arose from the 1927 conveyances.[6] A resulting trust in real estate arises where one party furnishes the consideration to purchase property, not intending a gift or advancement, yet title is taken in the name of another. See *Meskell* v. *Meskell*, 355 Mass. 148, 150 (1969); *Davis* v. *Downer*, 210 Mass. 573, 575 (1912). "A resulting trust must arise, if at all, at the time of the execution of the deed." *Dwyer* v. *Dwyer*, 275 Mass. 490, 494 (1931). In the 1927 conveyances, the School Corporation granted all of its interest in certain property to the Bishop of Springfield. As such, it falls outside the traditional boundaries of a resulting trust where one party furnishes the consideration and another party takes title. The only allegation made by the plaintiffs to justify their claims of a resulting trust is their contention, that "there was no intention to make a gift." Unsupported by any evidence whatsoever, this fails to create a genuine issue of fact sufficient to prevent judgment as a matter of law. *Meskell, supra* at 150-151 ("By the great weight of authority no resulting trust arises [when a party voluntarily transfers an undivided interest in realty, not money]"). See also *Kourouvacilis* v. *General Motors Corp., supra* at 711-712.

Likewise the plaintiffs' claims of equitable ownership based on a theory of constructive trust were properly dismissed. Under Massachusetts law, a court will declare a party a constructive trustee of property for the benefit of another if he acquired the property through fraud, mistake, breach of duty, or in other circumstances indicating that he would be unjustly enriched. *Nessralla* v. *Peck*, 403 Mass. 757, 762-763 (1989). The plaintiffs have presented no evi-

---

[6]The plaintiffs state in their reply brief that "the conveyances giving rise to the resulting trust were the 1927 conveyances." In that year, the School Corporation conveyed all but a corner parcel of the Hamilton Street property to the Bishop of Springfield.

dence of wrongdoing or unjust enrichment.[7] Instead, the plaintiffs attempt to manipulate the requirements of summary judgment as set forth in *Kourouvacilis, supra,* so that the Bishop's inability to prove the "absence of wrongdoing" renders summary judgment inappropriate. The plaintiffs did not set forth any facts to prevent the entry of summary judgment against them on this count.

We note in closing that, undoubtedly due to inadvertence, the judge below did not enter a declaratory judgment regarding the status of the property. We therefore remand this case to the Superior Court for entry of judgment declaring that the parishioners have no legal or equitable interest in the disputed property. The plaintiffs' promise-based claims are dismissed for want of jurisdiction. As to the plaintiffs' ownership claims, the judgment of the lower court is affirmed.

*So ordered.*

[7] The plaintiffs did contend that the 1958 deed to the Bishop, conveying all of the School Corporation's remaining interest in the property, evidences wrongdoing on its face. The supposed wrongdoing was two fold: (1) the deed was executed by the School Corporation's treasurer, who was also the pastor of the parish, and thus, allegedly, an agent of the Bishop; and (2) no authorizing vote for the conveyance occurred. As to the vote, the deed indicates that it occurred, and the plaintiffs presented no evidence to suggest that it did not. As to the charge that the treasurer was the pastor, the plaintiffs have set forth no acceptable legal theory for why this fact could constitute "wrongdoing."