McDonald, J.
On May 26, 1998, this case was before the court for a one day jury-waived trial. The plaintiffs James (“James”) and Robert (“Robert”) Ryan seek declarations and orders from the court concerning Robert’s interest in certain parcels of land on Lakeshore Drive in West Brookfield, Massachusetts (“Lot 36,” “Lot 37,” and “Lot 100”), and in the estate of their mother, Demetria Ryan (“Demetria”). Specifically, the plaintiffs seek: (1) a declaration that Lot 37 is owned by the plaintiffs as tenants in common and an order directing the defendant Cynthia Brodak (“Cynthia”) to execute a deed to that effect; (2) in the alternative, a declaration that a 50 percent interest in Lot 37 is being held in trust for the benefit of Robert by Cynthia; (3) a declaration that Lots 36 and 100 are owned by Robert, James and Cynthia as tenants in common and an order directing Cynthia to execute a deed to that effect; (4) in the alternative, a declaration that a one-third interest in Lots 36 and 100 is being held in trust for the benefit of Robert by James and Cynthia; (5) a declaration that Robert has a life estate in Lot 100; (6) a declaration that one third of Demetria’s estate is being held for the benefit of Robert by James and Cynthia; (7) in the alternative, a declaration that one third of the estate of Demetria is being held in a trust for the benefit of Robert by James and Cynthia. The plaintiffs also seek “such other and further relief [as the court] deems just and proper.”
After consideration of the testimony of the witnesses, the exhibits and the reasonable inferences from all the credible evidence, the court finds and rules as follows;
FINDINGS OF FACT
Demetria raised her sons, James and Robert, along with her niece, Cynthia. Although Demetria was Cynthia’s aunt, they considered themselves mother and daughter. In 1979, Robert was operated on for a brain tumor, and was seriously disabled when he fell during his recovery from the surgery. The fall resulted in partial paralysis of his right side and impairment of his mental acuity. His mental condition has improved over time, but his physical disability remains.
After his hospitalization, Robert moved into his mother’s home on Lot 100. Robert’s wife initiated a divorce. Demetria cared for Robert and assisted him with his financial affairs until her death in 1988. Robert was dependent upon his mother in his personal and financial affairs. Since Demetria’s death, Robert has resided alone in the home on Lot 100.
In September 1977, Demetria conveyed Lot 37 to Robert for consideration of one dollar. In 1981, after he became disabled, Robert complied with Demetria’s request that he convey Lot 37 to himself and James as tenants in common. In December 1987, Demetria met with all three parties to this action to discuss the distribution of her assets. Also present was Demetria’s nephew, an attorney who had previously provided legal services to Demetria and to other family members, including Cynthia.
At the December 1987 meeting, Demetria expressed her concern for Robert’s welfare in the event of her death, as well as her concern that Robert’s assets not be exhausted in the event that he required extended hospital or nursing home care. To that end, Demetria executed deeds to Lots 36 and 100 to James and Cynthia as tenants in common, with the understanding that they would hold the property for themselves and Robert in shares of one third each. Demetria also expressed her intent that Robert continue to live in the home on Lot 100 for as long as he desired and was able. James and Cynthia agreed with these conditions, and their agreement was a precondition for Demetria’s conveyance of Lots 36 and 100.
Also at the December 1978 meeting, Demetria instructed Robert to convey his half interest in Lot 37 to Cynthia. Robert did so, although the parties agree that he would have preferred to convey his interest to one of his daughters. Demetria’s undue influence overcame Robert’s will and his desire to convey to his daughter.
Also at the meeting, Demetria expressed her intent to bequeath her estate to James and Cynthia, again with the understanding that the estate be held for them and Robert in equal shares of one third. James and Cynthia agreed with these conditions, and their agreement was a pre-condition for Demetria’s bequests to them. On the same day, Demetria executed *325 a new will, in which she stated that she intentionally omitted Robert from the provisions of the will. I find that the will excluding Robert, the conveyance of Lots 36 and 100 to James and Cynthia, and the direction to Robert to convey his interest in Lot 37 to Cynthia were intended to protect Robert’s assets from being exhausted by hospital or nursing home care, and were not intended to prevent Robert’s assets from passing to his children.
In a previous will, executed before Robert was disabled, Demetria had bequeathed Lot 37 to Robert and James, and all her other assets to James, Robert and Cynthia equally. Demetria often told her sister, Alice Wilson, that she wanted Lot 37 to go to James and Robert, and all her other property and estate to be divided equally among James, Robert and Cynthia. Demetria had expressed her concern that Robert’s ex-wife not share in property conveyed to him, but had expressed no intent to prevent Robert’s children from inheriting, as distinguished from her opposition to inter vivos transfers to his children. Nevertheless, her conveyances to James and Cynthia and her devise to James and Cynthia were not accompanied by any intention that Robert ever acquire a interest in Lots 36 and 100 or in the personalty of her estate that he would be able to alienate or devise.
Several years ago, Robert asked Cynthia to execute deeds conveying to him his interest in Lots 36, 37 and 100. Cynthia refused, and has not spoken to him since. Cynthia has not alienated her interest in Lots 36, 37 and 100, and has not impaired these interests. Cynthia agrees that it was Demetria’s intent that Robert share in the properties and in the estate. She asserts, however, that Demetria wanted Cynthia and James to hold Robert’s interest in the property, and did not want Robert to have legal title.
Lots 36, 37 and 100 are not income producing properties.
Cynthia’s title to the several properties and her shared control of Demetria’s estate has not deprived Robert of the necessities of life. Robert has not been faced with expenses he was unable to meet from his own resources. Cynthia is prepared and willing to use the assets conveyed and bequeathed to her to provide for Robert, if necessary.
James and Cynthia were coexecutors of Demetria’s estate. Cynthia took possession of a bank account and a certificate of deposit valued at a total of $8000. Although she has spent the money, there is no evidence whether the money was spent for expenses of the estate or for her personal purposes. There also was no evidence whether the $8000 was greater than, equal to, or less than her one-third share of the estate. James and Robert also received the proceeds of bank accounts, but no evidence was presented as to the amounts.
Cynthia committed no fraud in regard to the conveyances of Lots 36, 37, and 100 nor in regard to the devise of Demetria’s personal property. Cynthia had no fiduciary relationship to Robert or Demetria. Cynthia did not use any confidential information acquired from Robert to her advantage at his expense. Robert did not provide consideration for the purchase of Lots 36, 37, or 100 by Demetria or any one else.
RULINGS OF LAW
An action for a declaratory judgment may properly be brought where there is an actual controversy involving a dispute about the legal status of an interest in land. See Coraccio v. Lowell Five Cents Savings Bank, 415 Mass. 145, 148 (1993). In this case, although the parties agree that Robert has beneficial interests in Lots 36 and 100, there is uncertainty about the status of Robert’s interests because they are not included in the words of the conveyance.
Ordinarily, where the words of a conveyance are clear and unambiguous, parol evidence is not admissible to prove that the parties intended something different from that which the written language expresses. Oldfield v. Smith, 304 Mass. 590, 601 (1939). The purpose of declaratory judgment, however, is to remove, and offer relief from, uncertainty and insecurity with respect to rights, duties, status, and other legal relations. G.L.c. 231, §9. The statute is intended to expand the court’s discretion in interpreting provisions of written instruments. Billings v. Fowler, 361 Mass. 230, 234 (1972).
When Demetria conveyed Lots 36 and 100 to James and Cynthia in 1987, the conveyances were made with the express understanding that Robert would have a one-third beneficial interest in both properties, and the right to live in the home on Lot 100 for as long as he desired and was able. Where a grantor makes an oral agreement to convey property in return for promises by the grantees, there is sufficient consideration to create a contract. Lyman v. Lyman, 133 Mass. 414 (1882). See also Jernegan v. Marshall, 290 Mass. 245, 247 (1935) (holding oral promise of grantee to care for grantor for remainder of grantor’s life constituted sufficient consideration to create enforceable contract); Lavoie v. Dube, 229 Mass. 87, 88 (Mass. 1918) (same). The contract between Demetria and James and Cynthia “was not a contract for the sale of land, or any interest therein, within the statute of frauds.” Lyman v. Lyman, 133 Mass. at 414. Accordingly, the oral contract is enforceable.
As a third-party beneficiary of the oral contract underlying Demetria’s conveyance of Lots 36 and 100 to James and Cynthia, Robert has a beneficial one-third interest in both properties, and this action for declaratory judgment is properly brought. Where an action for declaratory relief is properly brought, there must be a declaration of the rights of the parties. City of Boston v. MBTA and others, 373 Mass. 819, 829 (1977). Accordingly, Robert is entitled to a declaration that he has a beneficial one-third interest in Lots 36 and 100 and the right to live in the home on Lot 100 for so long as he desires and is able.
*326 The parties agree that the purpose of conveying the property to James and Cynthia was to protect Robert’s assets from catastrophic medical or nursing home costs that might be required for his future care. Robert still suffers from serious physical disabilities, and he remains at risk for such costs. Consequently, an order that Cynthia and James convey to Robert a one-third interest in the properties, or a life estate in Lot 100, would be contrary to Demetria’s intent to protect Robert’s assets.
To create a valid trust concerning land in Massachusetts, the trust must be in writing and be signed by the party creating it. G.L.c. 203, §1. Demetria did not execute a written trust instrument naming Cynthia and James the trustees and Robert the beneficiary. Accordingly, no explicit trust was created here.
A constructive trust is an equitable remedy applied to avoid unjust enrichment of one party at the expense of another, “where legal title to property was obtained [a] by fraud, or [b] in violation of a fiduciary relation.” Kelly v. Kelly, 358 Mass. 154, 156 (1969) quoting Barry v. Covich, 332 Mass. 338, 342 (1955). See also Meskill v. Meskill, 355 Mass. 148, 151 (1969). Neither condition applies here. There is no evidence, and not even a suggestion, that Cynthia acted in a fraudulent manner to cause Demetria to convey Lots 36 and 100 to her. Accordingly, no constructive trust will be imposed based on fraud.
In order for a conveyance to result in a constructive trust, absent fraud, there must be some evidence that a fiduciary relationship existed at the time of the conveyance. Kelly, 358 Mass. at 156; Meskill, 355 Mass. at 151-52. Although the parties agree that, at the 1987 meeting, Demetria expressed her intent to have Cynthia and James act in a fiduciary capacity regarding Robert’s interests after her death, there is no evidence that Cynthia and James had any fiduciary responsibilities toward Robert at the time of the execution of the conveyances. A fiduciary relationship “does not arise merely because the parties to a conveyance are members of the same family, even if the transferee promised to hold the land in trust.” Kelly, 358 Mass. at 156 and cases cited. Accordingly, no constructive trust will be imposed based on fiduciary relationship.
A resulting trust occurs when property is transferred to one individual, and the purchase price is furnished by another. Nesralla v. Peck, 403 Mass. 757, 763 (1989). A resulting trust “cannot be implied when the conveyance is voluntary, without the payment of any purchase price," Meskell v. Meskell, 355 Mass. 148, 151 (1969), quoting Howe v. Howe, 199 Mass. 598, 602 (1908). No resulting trust arises from a mere transfer of property, even if the transferee orally promises to hold the land in trust. Meskell, 355 Mass. at 151. Here, where there was no payment for the real property, a resulting trust was not created. Id. See also Nesralla, supra. Accordingly, Cynthia and James do not hold any interest in Lots 36 or 100 in trust for Robert.
Demetria made a valid inter-vivos conveyance of Lot 37 to Robert in 1977 for consideration of one dollar. In 1981, at his mother’s request, Robert conveyed his sole ownership in Lot 37 to himself and James as tenants in common. At the December 1987 meeting, therefore, Demetria had no ownership interest in Lot 37, and her intent concerning ownership of that property is irrelevant to this analysis.
An individual who signs a writing that is clearly a legal document is presumed to be fully aware of its terms, unless he was induced to sign it through fraud or undue influence. Bruno v. Bruno, 10 Mass.App.Ct. 811, 918 (1980). There is no suggestion that Robert’s deed of his interest in Lot 37 to Cynthia was the result of fraud.
Undue influence is defined as “whatever destroys free agency and constrains the person whose act is under review to do that which is contrary to his own untrammeled desire.” Bruno, Mass.App.Ct. at 918. Robert did not want to transfer his interest in Lot 37 to Cynthia at the December 1987 meeting. At that meeting, Robert expressed his desire to transfer his interest to his daughter. In addition in December 1987 Robert was suffering sufficient mental impairment to interfere with his ability to manage his own affairs.
At the time of the conveyance Robert did not have a free and independent desire to transfer his half interest in Lot 37 to Cynthia, and was too dependent on his mother’s judgment in business affairs to exercise his own free will in connection with the property. Accordingly, the conveyance is voidable, and Cynthia must return Robert’s half interest in the property to him.
Demetria’s will reflected her intent to protect Robert’s assets. At the time the will was executed, the parties had an oral understanding that Robert, James and Cynthia would have equal one-third interests in Demetria’s estate. A “testator’s will should not be reconstructed in order to impose additional conditions or limitations not clearly found in the words themselves.” Sullivan v. Roman Catholic Archbishop of Boston, 368 Mass. 253, 258 (1975), citing Mackey v. Bowen, 332 Mass. 167, 170 (1955). In this case, there is no ambiguity in the words of the will.
The fact that Demetria may have expressed certain oral expectations at the time of the 1987 meeting does not alter the analysis. Where Demetria, with the advice of counsel, executed a valid will expressly granting her estate to James and Cynthia, the parol evidence rule “precludes the introduction of evidence which alters or contradicts an unambiguous writing.” Ward v. Grant, 9 Mass.App.Ct. 364, 369 (1980). Where Demetria’s will expressly left her estate to James and Cynthia, the court may not alter the will to reflect oral understandings that may have existed at the time of execution. See Sullivan, Supra.
*327 ORDER FOR JUDGMENT
For the foregoing reasons, it is hereby ORDERED that:
1. Judgment shall enter for the plaintiffs as to Count I of the complaint. The plaintiffs shall, within thirty days of the date of this order, prepare a quitclaim deed conveying Cynthia’s interest in Lot 37 to Robert, and the defendant shall, within ten days of receipt of said deed, execute the deed and deliver it to Robert.
2. Judgment shall enter for the defendant as to Counts II, IV, V, and VI.
3. Judgment shall enter for the defendant as to so much of Count III as seeks a declaration that Lots 36 and 100 are owned by the plaintiffs and the defendant as tenants in common and that the plaintiff Robert G. Ryan has a life estate in Lot 100.
4. Judgment shall enter for the plaintiff Robert G. Ryan as to so much of Count III as seeks a declaration that Robert G. Ryan possesses beneficial one-third interests in Lots 36 and 100 and the right to live in the home located on Lot 100 for so long as he desires and is able, but such interests and right are not alienable by him shall not survive his death.