McIntyre, Frances A., J.
Saint Mark of Ephesus Orthodox Cathedral, Inc. (“Saint Mark’s”) had been a congregation within the Holy Orthodox Metropolis of Boston, Inc. (the “Metropolis”) since 1972 until it elected to leave the Metropolis in September of 2012. The parties now dispute which entity is the true owner of certain property located at 850-854 South Street in Roslindale, Massachusetts. While the Metropolis holds the deed to the South Street property, Saint Mark’s claims that the Metropolis simply holds the property in trust for the congregation.
Based upon this court’s application of “neutral principles of law,” which this court is bound to apply in disputes concerning religious entities, the Metropolis’s motion for summary judgment must be ALLOWED. A declaratory judgment is to enter.
BACKGROUND
The summary judgment record reflects the following facts, which this court views in the light most favorable to Saint Mark’s.
The Society of The Holy Transfiguration Monastery, Inc. (the “Monastery”) was founded in 1961 and began hosting services at its men’s monastery in the early 1970s. Faced with an expanding number of worshipers, the Monastery began looking for a property where *163 it could hold services and have a parish school. Two worshipers agreed to personally guarantee a mortgage and in 1972 the Monastery purchased a property at 39 Albano Road in Roslindale. The Monastery paid the full purchase price and became the sole owner of the Albano Road property. Following the purchase, Saint Mark’s parish was created and the Monastery permitted it to hold religious services at the Albano Road property. A fire consumed that property in 1975 and the Monastery sold it, received the proceeds, and began searching for a new property.
The Monastery obtained a new mortgage for $50,000 from the Roslindale Co-operative Bank (the “Mortgage”) that was backed by the personal guarantees of two Saint Mark’s parishioners. The Monastery pooled the Mortgage Funds, along with the proceeds from the sale' of the Albano Road properly and charitable contributions from various parishioners to purchase a new property. Members of the Monastery handled all of the bank transactions and contacts.
In October of 1975, the Monastery purchased a property located at 850-854 South Street in Roslindale, Massachusetts (“the Property”) from the Southern New England District of the Assemblies of God, Inc. for the sum of $75,000.00. The founding members of Saint Mark’s intended that the Monastery be the sole owner of the new property, in part, because it had served worshipers without requesting compensation for many years.
The 1975 Deed, dated October 28, 1975, reflects that the Southern New England District of the Assemblies of God, Inc. transferred its entire interest in the Property to the Monastery, without reserving any rights to Saint Mark’s. The deed itself contains no reference to Saint Mark’s and states that the Monastery paid the sum of $75,000.
Saint Mark’s parishioners knew that the Monastery owned the property and did not have any expectation of ownership in the Property. At one point, several members of the original parishioners left Saint Mark’s to join another church, but they did not request their donations back, nor did they attempt to have title to the Property transferred.
The Property consisted of two buildings, an existing church and a gymnasium, which stood three feet from one another. The Monastery hired a contractor, Alexis Panov, to convert the gymnasium into the church building that Saint Mark’s has now used since 1975. Monks from the Monastery worked under Mr. Panov’s supervision and provided a substantial amount of the labor. The other building has been used by another religious organization, Saint Anna’s Orthodox Church (“Saint Anna’s”), since the Property was purchased. Since their inception, neither church has been required to pay rent for their use of the Property but they have been responsible for the maintenance costs of the Property and buildings.
At first, priest-monks from the Monastery served Saint Mark’s parish until it was eventually given a full-time priest. This priest was initially supported by a stipend provided by the Monastery. In the candle areas of their churches, both parishes installed collection boxes for anonymous charitable donations of any amount. These donations were then pooled and delivered to Father Isaac Adondakis, who paid the monthly mortgage payments and other expenses. The entirety of the Mortgage was paid off using funds that were collected from the donation boxes.
Father Christos Constantinou (“Father Christos”) joined Saint Mark’s parish in 1978 and eventually became its rector. In 1997, Saint Mark’s parish organized as a legal entity and Father Christos became President of the corporate entity, Saint Mark of Ephesus Orthodox Cathedral, Inc.
The Metropolis was formally organized as a corporate entity in 1999 and became a self-ruling diocese with jurisdiction over Saint Mark’s in 2001. Prior to 2001, the Metropolis had existed under various other authorities, namely the Russian Orthodox Church Outside of Russia, the True Orthodox Church of Greece—Akakios Synod and the Auxentius Synod. The Orthodox Church is a hierarchical church with the Synod at the top of the structure. Beginning in 2001, Saint Mark’s was a parish within the exclusive jurisdiction of the Metropolis.
The Monastery held legal title to the Property from 1975 to 2001. On October 24, 2001 the Monastery transferred full title to the Property to the Metropolis for the consideration of $1. Metropolitan Ephraim, who is head of the Metropolis, states that the Monastery did so with the intention of creating a cathedral parish for the newly created Metropolis and to safeguard the rights of both Saint Mark’s and Saint Anna’s. At that meeting, Father Christos requested that the Monastery transfer the Property to Saint Mark’s but the Monastery declined to do so. Following the transfer of title, Saint Mark’s became the Cathedral Church of His Eminence, Metropolitan Ephraim.
Attorney Meletios D. Chacharone drafted the October 2001 deed transferring the Property from the Monastery to the Metropolis. He states that the transfer was intended to “benefit Saint Mark’s and its parish, . . . protect the investment that Saint Mark’s and its parishioners had made in the property over the years, and would likely result in legal title eventually passing to Saint Mark’s.” Attorney Chacharone drafted the deed based on the “understanding” that the Property was to be held in trust for Saint Mark’s. Likewise, several members of the Metropolis’s board of directors, who together comprise a majority of that board, have expressed their understanding that the Property was to be held in trust for the benefit of Saint Mark’s.
In the years following the conveyance from the Monastery to the Metropolis, some Saint Mark’s pa *164 rishioners discussed selling the Property and finding a new church. In light of this discussion, Metropolitan Ephraim sent a letter dated May 26, 2005 (the “2005 letter”) to Father Christos and Father John, the rector of Saint Anna’s, unequivocally stating that the Metropolis was the legal owner of the Properly and that the only person with authority to transfer the Property was the acting Metropolitan of the Metropolis. Neither Father Christos nor Father John disputed the Metropolis’s ownership or contended that the Property was being held in trust.
Metropolitan Ephraim has only conducted services at Saint Mark’s on major holidays but considers Saint Mark’s to be the Metropolis’s Cathedral Church. Despite these only occasional visits, Saint Mark’s has deferred to the Metropolitan’s authority by requesting, amongst other things, permission to use the church hall for ethnic dancing, and permission to install folding chairs within the nave of the church. The Metropolitan denied both of these requests, which denial was honored.
In addition to paying off the Mortgage, Saint Mark’s parishioners have donated hundreds of thousands of dollars to upgrade and maintain the church building. In 2008, Saint Mark’s paid for renovations to the church hall and kitchen that cost the parish approximately $250,000. The parishioners also paid $40,000 in 2012 to upgrade the heating and air conditioning system.
Until the fall of 2012, Saint Mark’s parish continued to be a member of the Metropolis and one of its parishes. That fall, Saint Mark’s parishioners voted to leave the Metropolis and join a different religious organization because of a faith-based dispute. Father Christos sent Metropolitan Ephraim a letter withdrawing Saint Mark’s from the Metropolis based upon “canonical grounds.” Following Saint Mark’s withdrawal, Metropolitan Ephraim requested that Saint Mark’s vacate the Property. Father Christos then changed the locks of Saint Mark’s church building and barred the Metropolitan from access. The Metropolis’s request that Saint Mark’s vacate the Property led Saint Mark’s to file the present lawsuit on October 1, 2012.
Saint Mark’s Amended Complaint contains five counts: declaratory judgment; imposition of a constructive trust; imposition of a resulting trust; unjust enrichment as to the Property; and unjust enrichment as to the renovations to the Property. The Metropolis has filed counterclaims for tortious interference with property, a declaratory judgment in its favor, and injunctive relief.
STANDARD OF REVIEW
Summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The moving party bears the burden of establishing the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once this is satisfied, the burden shifts to the party opposing summary judgment to allege specific facts establishing the existence of a genuine issue or issues of material fact. Id. In assessing whether each party has met its burden, the court is not permitted to weigh the evidence, determining the credibility of any witnesses or make any findings of fact. Kelly v. Rossi, 395 Mass. 659, 663 (1985). Moreover, “[t]he evidence is ‘considered with an indulgence in the [opposing party’s] favor.’ ” However, “[a] complete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial.” Kourouvacilis, 410 Mass, at 711, citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
The party opposing summary judgment cannot defeat the motion simply by resting on the pleadings and mere assertions that there are disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). In determining whether there are genuine issues of material fact, the court may consider the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Mass.R.Civ.P. 56(c); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). Rule 56(e) provides that affidavits used to support or oppose a summary judgment motion “shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.” Mass.R.Civ.P. 56(e).
DISCUSSION
I. Saint Mark’s Motion under Rule 56(f)
Before discussing the merits of this case, this court must determine whether Saint Mark’s motion for additional time to conduct discovery under Mass.RCiv.P. 56(f) should be granted. A party seeking postponement under rule 56(f) must persuade the court that a grant of additional time is likely to reveal meaningful additional facts that could affect the outcome of the summary judgment motion. See The Alphas Co. v. Kilduff, 72 Mass.App.Ct. 104, 109-10 (2008). Here, Saint Mark’s argues that it should be given additional time to take the depositions of those individuals who submitted affidavits on behalf of the Metropolis. Five factors must be considered when confronted with a Rule 56(f) affidavit: “authoritativeness, timeliness, good cause, utility, and materiality.” Id. at 110. While the affidavit of Saint Mark’s counsel meets the requirements of authoritativeness, timeliness and good cause, there does not appear to be any value in any further discovery, negating the utility and materiality factors.
Counsel argues that the depositions will reveal “how the Property was held, who financed the purchase of the Property, who financed the repairs and renovations of the Property, and how much money members of the church spent compared to the amount spent by the Metropolis.” Even if beneficial and salient *165 facts were clearly forthcoming, which is unlikely given that the requested depositions are of the defendant’s witnesses, it is doubtful that they would impact the outcome of this motion. The detailed affidavits submitted by the Metropolis are signed under the pains and penalties of perjuiy, making it highly unlikely any inconsistent facts would be forthcoming as a result of a deposition. Given this backdrop, Saint Mark’s motion for additional discovery under Rule 56(f) must be denied. See The Alphas Co., 72 Mass.App.Ct. at 114.
II. Review of the Merits
Because this case involves a dispute between two religious organizations, review of this case starts with the baseline principle that “the First Amendment prohibits civil courts from intervening in disputes concerning religious doctrine, discipline, faith, or internal organization.” Alberts v. Devine, 395 Mass. 59, 72 (1985), and cases cited therein. The First Amendment places disputes “involving church ‘doctrine, canon law, polity, discipline, and ministerial relationships’ ” beyond the jurisdiction of this court. Maffei v. Roman Catholic Archbishop of Boston, 449 Mass. 235, 244 (2007), quoting Williams v. Episcopal Diocese of Mass., 436 Mass. 574, 579 (2002). However, this court may resolve a church property dispute “if and to the extent, and only to the extent, that [it is] capable of resolution under ‘neutral principles of law’ which [are the] ‘well-established concepts of trust and properly law familiar to lawyers and judges.’ ” Id. at 243-44, quoting Jones v. Wolf, 443 U.S. 595, 603 (1979).
Both parties contend that this dispute can be resolved under a “neutral principles of law” approach. When reviewing a religious property dispute, civil courts “may examine such sources as (a) statutory provisions governing the holding of property by religious corporations, (b) the constitutions and by-laws of the religious organizations involved, especially insofar as they pertain to the ownership and control of church property and (c) the deeds to the property in question, to resolve the dispute.” Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 786 (1994) (internal quotations omitted). Here, the 1975 and 2001 deeds do not mention Saint Mark’s. Nor is there any reference that the Property is to be held in trust. Given the unequivocal nature of these documents, there is no dispute that the Metropolis holds legal title to the Property.[1]
i.Subject Matter Jurisdiction
The legal and equitable claims advanced by Saint Mark’s are all based upon an alleged verbal “understanding” that the Metropolis held the Property in trust for the parish’s benefit.[2] This court may not “inquire into the ecclesiastical authority of [the Metropolitan] to bind the [Metropolis] by making oral promises about church property.” Maffei, 449 Mass, at 244. Framing this agreement as an “understanding” does not detract from what it essentially is, namely a promise by a religious entity to another member of that same religious entity. Promises of this nature are beyond this court’s jurisdiction to review. See Maffei, 449 Mass. at 250 (inquiry into the “ecclesiastical authority of the [diocese] over the parishioners, [or] the ecclesiastical authority of the [diocese] . . . over [the parish]” goes “far afield” from neutral principles of law approach); Fortin, 416 Mass. at 785 (“to inquire into an alleged promise by the Bishop to keep a parish open or refrain from merging it with another parish was an impermissible intrusion into the Bishop’s ecclesiastical authority”). Accordingly, insofar as Saint Mark’s claims are based upon this “understanding,” it is beyond this court’s jurisdiction to inquire into it. However, this dispute may properly be decided under a “neutral principles of law” approach. See id. at 788.
ii.Resulting Trust Claim
Typically, a resulting trust is found “where ‘a transfer of property is made to one person and the purchase price is paid by another; in such a case a trust results in favor of the person who furnished the consideration.’ ” Maffei, 449 Mass. at 254, quoting Meskell v. Meskell, 355 Mass. 148, 150 (1969). “[A] resulting trust must arise, if at all, at the time of the execution of the deed.” Id., and cases cited herein. “[N]othing done after the completion of the purchase could affect the creation of the trust.” Checovich v. Checovich, 339 Mass. 71, 74 (1959).
The 1975 transaction did not create a resulting trust in favor of Saint Mark’s because there is no record evidence that Saint Mark’s provided any consideration for that conveyance.[3] See Maffei, at 253-54. The record reflects that the Property was purchased using funds the Monastery provided from the proceeds of the sale of the Albano Road property and a Mortgage that the Monastery took in its own name. While Saint Mark’s paid the entirety of the Mortgage, it was not legally obligated to do so. Actions undertaken after the conveyance is completed cannot form the basis of a resulting trust claim, rendering Saint Mark’s claim based upon the 1975 deed conveyance insufficient as a matter of law.
Likewise, the 2001 transaction does not give rise to a resulting trust. In that transaction, the Metropolis provided only nominal consideration.[4] There is nothing in the summary judgment record that shows that Saint Mark’s provided any consideration for that transfer. Even if Saint Mark’s had an equitable ownership interest in the Property from the 1975 transaction, “no resulting trust arises when a party voluntarily transfers an undivided interest in really, not money.” Meskell, 355 Mass, at 150-51. The summary judgment record does not support Saint Mark’s claim for a resulting trust and it must be dismissed.
iii.Constructive Trust Claim
A court can impose a constructive trust when a party has acquired an interest in land in breach of a legal duiy to the entity that granted them that interest. *166 Fortin, 416 Mass, at 789. “A constructive trust is a flexible tool of equity designed to prevent unjust enrichment resulting from fraud, a violation of a fiduciary duty or confidential relationship, mistake, or ‘other circumstances’ in which a recipient’s acquisition of legal title to property amounts to unjust enrichment.” Maffei, 449 Mass. at 246, and cases cited therein.
Contrary to Saint Mark’s arguments, this court may not, as a matter of law, inquire into any fiduciary relationships that exist between members of religious organizations. See Maffei, 449 Mass. at 249-50 (finding inquiry into fiduciary relationship between clergy and parishioner is “impossible as a matter of law” because it would “require a civil court to affirm questions of purely spiritual and doctrinal obligation”). Saint Mark’s unjust enrichment argument, based upon the parishioners’ anonymous donations to the church, are not actionable as a matter of law. Fortin, 416 Mass. at 783, 789. Nothing in the summary judgment record supports allegations of fraud. See Maffei 449 Mass. at 252 (“a ‘subsequent refusal to carry out an oral promise, standing by itself, is not. .. fraud’ remediable by a constructive trust”). Likewise, there is no suggestion in the record that the Metropolis took advantage of any confidential information that Saint Mark’s provided. Accordingly, there is no basis on which this court could allow Saint Mark’s claim for a constructive trust.
iv. Unjust Enrichment Claims
Finally, Saint Mark’s predicates its unjust enrichment claims on the fact that the parishioners of Saint Mark’s have provided all of the funds used to pay off the Mortgage and complete extensive renovations. Saint Mark’s claim, for unjust enrichment must fail because the SJC has held that even where parishioners have donated upwards of one million dollars to construct a church building, a diocese has not been unjustly enriched if it later elects to close the church and sell the property. Fortin, 416 Mass. at 783, 789. As here, in Fortin, the higher-level diocese held title to the property, not the parish itself. Id. at 788. Any claim of unjust enrichment must be dismissed because anonymous donations by parishioners within a hierarchical church structure cannot form the basis of an unjust enrichment claim. Id.
III. Conclusion
The. court recognizes how this decision will impact the plaintiffs parishioners who wish to continue to worship at the Property. However, the plaintiff sought adjudication of this matter in a civil court, which is constrained to apply “neutral principles of law” when reviewing a dispute between religious entities. The summary judgment record requires this court to find, as a matter of law, that the Metropolis owns the Property free and clear of Saint Mark’s equitable claims.
ORDER
For the foregoing reasons, The Holy Orthodox Metropolis of Boston, Inc.’s Motion for Summary Judgment must be ALLOWED. Saint Mark of Ephesus Orthodox Cathedral, Inc.’s Amended Complaint is DISMISSED. A Declaratory Judgment shall issue stating the rights and duties of the parties.

 While the deeds reflect that the Metropolis is the sole owner of the Property, Saint Mark’s argues that a provision in the “Amended and Restated By-Laws of the Holy Orthodox Metropolis of Boston, Inc.” (the “By-laws”) makes clear that property ownership within the Metropolis is congregational, meaning that Saint Mark’s must be the true owner. Problematically, both parties have put into the record documents entitled “Amended and Restated By-Laws of the Holy Orthodox Metropolis of Boston, Inc.” Neither document is dated nor are they identical. However, the relevant text is the same, only with different section headings and numbers.
Under Section 2 of the By-Laws, which outlines the hierarchical structure of the church, bylaw 2.1 specifies that the Metropolis “is a hierarchical church, except with respect to . . . property, as to which it is congregational.” However, by-law 6.5 entitled “Parish Property and Corporation Property” states that the Metropolis is permitted to “acquir[e] or retain! ] title to the real property that shall constitute the [Metropolis’s] Cathedral Parish.’ ” As noted above, Saint Mark’s is the Metropolis’s Cathedral Parish. Section 10, “Conditions of Affiliation; Severence of Affiliation,” confirms that “the [Metropolis] shall have the right to acquire and retain sole title to the real property that shall constitute the [Metropolis’s] Cathedral Parish.”
The specific By-Laws undercut Saint Mark’s theory that ownership of the Saint Mark’s church building is congregational. The By-Laws indisputably reflect the Metropolis’s intention to acquire and retain sole title to the Property. Cf. Primate & Bishops’ Synod of the Russian Orthodox Church Outside Russia v. Russian Orthodox Church of the Holy Ressurection, Inc., 35 Mass.App.Ct. 194 (1993), affd, 418 Mass. 1001 (1994), cert. denied, 513 U.S. 1121 (1995) (Judge found congregational ownership where "parish was always a separate legal entity . . . had paid for the real estate and its other property with its own funds and always had held title in its own name . . . [and] [t]he property was never ‘diocesan, monastic or Church property’ ”).

 his “understanding” is set forth by four affiants who were members of the Board of the Holy Orthodox Metropolis in 2001. Remarkably, the source of the understanding is nowhere elaborated; no statement, individual, or document is proffered to support such an understanding. Saint Mark’s was represented in the transaction by a fifth affiant, and yet, no memorialization of the understanding is advanced.

 Saint Mark’s claims to have solely paid the entire $75,000 consideration, but is unable to prove this assertion. The proof advanced is the affidavit of Father Christos, who has no personal knowledge of the transaction, as he came to the parish three years later. Also, plaintiffs assertions and the Christos affidavit are belied by the documents. The Monastery secured the mortgage and was the mortgagor. The Monastery held title to the burned property that Saint Mark’s claims to have insured. Parishioners of Saint Mark’s and also Saint Anna’s made anonymous donations.
On this record, the court must accept the Metropolis’s position that it paid the consideration for the Property, which is not effectively disputed. See Mass.R.Civ.P. 56(c).

 The 2001 Deed reflects that the Metropolis paid the $1.00 of consideration.